HUGHES HUBBARD & REED LLP
George A. Tsougarakis
Eric Blumenfeld
One Battery Park Plaza
New York, New York 10004
(212) 837-6000 (telephone)
(212) 422-4726 (facsimile)
george.tsougarakis@hugheshubbard.com
eric.blumenfeld@hugheshubbard.com

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| HIS ALL HOLINESS, BARTHOLOMEW I, THE ARCHBISHOP OF CONSTANTINOPLE, NEW ROME, AND ECUMENICAL PATRIARCH; THE HOLY METROPOLIS OF DRAMA; and THE MONASTERY OF THEOTOKOS EIKOSIPHOINISSA,<br><br>　　　　　　　　　　Plaintiffs,<br><br>vs.<br><br>PRINCETON UNIVERSITY,<br><br>　　　　　　　　　　Defendant. | Civil Action No. _____<br><br>**JURY TRIAL DEMANDED** |

Plaintiff His All Holiness, Bartholomew I, The Archbishop of Constantinople, New Rome, and Ecumenical Patriarch residing at Rum Patrikliği, 342 20 Fener-Haliç, Istanbul, Turkey; Plaintiff the Holy Metropolis of Drama residing at Eleftheriou Venizelou St. No. 168, Drama 66100, Greece; and Plaintiff the Theotokos Eikosiphoinissa Monastery residing at Eparchiaki Odos Neas Brachas-Nikisianis, Proti Serron 62047, Greece (collectively, "Plaintiffs" or the "Patriarchate"), by way of Complaint against Defendant Princeton University located in Princeton, New Jersey 08544, state as follows:

79473746_25

## COMPLAINT

### I.

### NATURE OF THE ACTION

1. This is an action to recover four religious manuscripts in the unlawful possession of Princeton University. The manuscripts are three Byzantine-era manuscripts known as Garrett MS. 14, Garrett MS. 16, Garrett MS. 16A, and one 16th century manuscript known as Princeton MS. 81 (collectively, the "Manuscripts"). For centuries, the Manuscripts were housed in the library of the Monastery of the Theotokos Eikosiphoinissa (the "Monastery") in the village of Kormista, Prefecture of Serres, near Drama, in northern Greece. On March 27, 1917, however, Bulgarian forces stormed the Monastery and stole the most valuable manuscripts of the Monastery's library, including the Manuscripts at issue here. Following the theft, the Manuscripts were brought to Sofia, the capital of what was then known as the Kingdom of Bulgaria.

2. The stolen manuscripts were thereafter disseminated to dealers, book sellers, and auction houses across Central Europe. Princeton purchased one of the Manuscripts, Princeton MS. 81, from the Frankfurt-based auction house Joseph Baer & Co., Frankfurt am Main (the "Baer Auction House") in 1921, just four years after it had been stolen from the Monastery. And then, in 1924, Robert Garrett, a Princeton trustee and alumnus and a collector of Greek manuscripts, purchased the other three manuscripts at issue here, Garrett MS. 14, Garrett MS. 16, and Garrett MS. 16A, also from the Baer Auction House. Garrett donated these three Manuscripts to Princeton in 1942.

3. Because the Manuscripts were stolen, Princeton was unable to, and never did, acquire good title or any interest in the Manuscripts. Upon discovering that the Manuscripts were in Princeton's possession, Plaintiffs duly demanded their return. Princeton has not agreed to return the Manuscripts. Accordingly, the Plaintiffs hereby bring this case to recover their possession.

## II.

## PARTIES

4. Plaintiff His All Holiness, Bartholomew I, The Archbishop of Constantinople, New Rome, and Ecumenical Patriarch ("Patriarch") is a citizen of a foreign state residing at Rum Patrikliği, 342 20 Fener-Haliç, Istanbul, Turkey. The Patriarch is the spiritual leader of the Eastern Orthodox Christian Church.

5. Plaintiff the Holy Metropolis of Drama ("Metropolis") is a subject of a foreign state residing at Eleftheriou Venizelou St. No. 168, Drama 66100, Greece. The Metropolis falls under the ecclesiastical jurisdiction of the Patriarch.

6. Plaintiff the Theotokos Eikosiphoinissa Monastery is a subject of a foreign state residing at Eparchiaki Odos Neas Brachas-Nikisianis, Proti Serron 62047, Greece. The Monastery falls under the ecclesiastical jurisdiction of the Patriarch and of the Metropolis.

7. Plaintiffs are the legal owners of numerous artifacts that are part of the history and religious mission of the Eastern Orthodox Christian Church, including the Manuscripts.

8. Defendant Princeton is a private university located in Princeton, New Jersey.

## III.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), in that the action is between citizens or subjects of foreign states and a citizen of this State, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

10. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(a)-(c), because Princeton is subject to personal jurisdiction in this district, a substantial part of the events or omissions giving rise to the claims herein occurred in this district, and the property that is the subject of this action is situated in this district.

## IV.

## FACTS APPLICABLE TO ALL COUNTS

**A.  The Monastery**

11. The Monastery is located approximately 35 miles from the Bulgarian border, in the Pangaio Mountains, between the villages of Kormista and Nikisiani, Prefecture of Serres, near Drama in northern Greece.

12. The Monastery is one of the oldest monasteries of the Greek region of Macedonia. It was founded in the 5th century A.D.

13. By the beginning of the twentieth century, the Monastery had amassed a remarkable collection of books, relics, and valuable Byzantine manuscripts, including the Manuscripts.

**B.     The Manuscripts**

14.     The Patriarchate is seeking the return of four manuscripts, which were stolen from the Monastery in 1917 and which are currently in Princeton's possession: Garrett MS. 14, Garrett MS. 16, Garrett MS. 16A, and Princeton MS. 81.

15.     Each Manuscript is described at length in the Princeton University Library publication *Greek Manuscripts at Princeton, Sixth To Nineteenth Century: A Descriptive Catalogue* (Princeton University Press 2010) written by Prof. Sofia Kotzabassi and Nancy Patterson Ševčenko, with the collaboration of Don C. Skemer, Curator of Manuscripts in the Department of Rare Books and Special Collections at the Princeton University Library (the "Princeton Catalog"), excerpts of which are annexed as Exhibit A.

**Garrett MS. 14**

16.     Garrett MS. 14 is a parchment manuscript of Saint John Chrysostom's *Commentary on the Gospel of Matthew* (Homilies 1-45) written in 955 A.D. by the scribe Nikephoros the Notary. Ex. A at A8-9. In the sixteenth century, Garrett MS. 14 became part of the Monastery's collection where it was catalogued as "Kosinitza[1] library MS. 32." Ex. A at A14.

**Garrett MS. 16**

17.     Garrett MS. 16 is a parchment manuscript of Saint John Climacus' *Heavenly Ladder* written in 1081 A.D. in Constantinople by the scribe Joseph. Ex. A at A17, A20-21. Since at least the beginning of the sixteenth century, Garrett MS. 16 has been a part of the Monastery's collection where it was catalogued as "Kosinitza . . . [N]o. 112." Ex. A at A29.

---

[1]  The "Kosinitza" monastery is the Turco-Bulgarian designation of the Eikosiphoinissa Monastery. *See* Ex. A at A6.

**Garrett MS. 16A**

18. According to the Princeton Catalog, Garrett MS. 16A is a fragment of a single page that "probably" once belonged to "the first volume of John Chrysostom's *Commentary on the Gospel of Matthew* (Homilies 1-45)" and which "was perhaps part of a mutilated manuscript at Kosinitza, where Garrett MS. 16 was probably rebound." Ex. A at A32. Accordingly, Garrett MS. 16A was likely part of Saint John Chrysostom's *Commentary on the Gospel of Matthew* (Homilies 1-45) (*i.e.*, Garrett MS. 14) and at some point was rebound to Garrett MS. 16.

**Princeton MS. 81**

19. Princeton MS. 81 is a manuscript of Saint John Chrysostom's *Commentary on the Gospel of Matthew* written at the Monastery in the sixteenth century. Ex. A at A33-34.

**C. There is Clear Evidence that the Manuscripts Were at the Monastery Prior to 1917.**

20. In 1885, the Greek Literature Club of Constantinople commissioned Greek scholar Athanasios Papadopoulos-Kerameus to prepare a catalog of Greek manuscripts located in Byzantine Anatolia, including the manuscripts located in the Monastery's library (the "Kerameus Catalog"). *See, e.g.*, Ex. A at A15, A17 (referring to the Kerameus Catalog). Extracts of the Kerameus Catalog are annexed as Exhibit B.

21. In the Kerameus Catalog, published in 1887, Papadopoulos-Kerameus listed Manuscript No. 32 (now Garrett MS. 14) and Manuscript No. 112 (now Garrett MS. 16), as being part of the Monastery's library. Ex. B at B2-3 (the paragraphs that refer to the Manuscripts have been highlighted for convenience).

22. As explained above, Garrett MS. 16A was likely once a part of Garrett MS. 14 and at some point in time may have been rebound to Garrett MS. 16. *See supra* at ¶ 18. Therefore, although not individually identified in the Kerameus Catalog, Garrett MS. 16A is included in the Kerameus Catalog by its references to Garrett MS. 14 and Garrett MS. 16 and therefore also part of the Monastery's library at all relevant times prior to 1917.

23. Princeton MS. 81 was also part of the Monastery's library at all relevant times prior to 1917. Princeton clearly states in the Princeton Catalog that MS. 81 "*was written at the Kosinitza monastery (Eikosiphoinisses monastery in Kormitsa, Prefecture of Serres, near Drama) and remained there until 1917 . . . .*" Ex. A at A34 (emphasis added).

### D. The Theft of the Manuscripts in 1917

24. During World War I, the Monastery suffered a terrible atrocity at the hands of an invading force of Bulgarian guerillas.

25. On March 27, 1917, Bulgarian troops stormed the Monastery, assaulted the resident monks, and stole, among other things, the most valuable manuscripts of its library, including the Manuscripts. The theft is recounted in a letter dated March 31, 1917—four days after the theft—and written by the Mayor of Drama to the Greek Foreign Affairs Delegation of Sofia, Bulgaria. A copy of the letter published in *Rapports et Enquêtes de la Commission Interalliée Sur Les Violations Du Droit Des Gens Commises En Macédoine Orinetale*, is annexed as Exhibit C (an uncertified translation of the letter is also provided for convenience).

26. In addition, Princeton itself has acknowledged on numerous occasions that the Manuscripts at issue here were removed during the 1917 theft.

27. In 2010, Princeton's experts, Dimitri Gondicas, Executive Director of Princeton's Hellenic Studies Program, and Don Skemer, Curator of Manuscripts at the Princeton

University Library, acknowledged in the Preface to the Princeton Catalog that "[a]ll of the [Eikosiphoinissa] [M]onastery's manuscripts were removed from its library and taken to Sofia by the Bulgarian authorities in March 1917 . . . ." Ex. A at A4-5.

28. More specifically, Princeton has acknowledged that each one of the Manuscripts was removed from the Monastery in 1917.

29. With respect to Garrett MS. 14, Princeton has stated that:

> Garrett MS. 14 has been identified as Kosinitza library MS. 32, which was seen and described there by Papadopoulos-Kerameus . . . in 1885. ***In 1917 it was removed from the monastery, along with other important manuscripts, by the Bulgarian authorities and transferred to Sofia*** . . . . In 1920-21 it was listed in the catalogue of the German antiquarian bookseller Joseph Baer, Frankfurt am Main, from whom it was acquired by the New York antiquarian bookseller Wilfred M. Voynich, for Robert Garrett on 3 January 1924. . . . Gift of Robert Garrett . . . to the Princeton University Library in 1942. Ex. A at A14-15 (emphasis added).

30. With respect to Garrett MS. 16, Princeton has stated that:

> The manuscript was described there, as no. 112, in 1885 by Papadopoulos-Kerameus.... ***In 1917 it was removed from the monastery by the Bulgarian authorities and presumably taken to Sofia*** . . . In 1920-21 it was in the catalogues of the German antiquarian bookseller Joseph Baer, Frankfurt am Main, from whom it was acquired by the antiquarian bookseller Wilfred Voynich (New York) for Robert Garrett on 3 January 1924. . . . Gift of Robert Garrett . . . to the Princeton University Library in 1942. Ex. A at A29 (emphasis added).

31. Princeton's statements regarding the 1917 removal of Garrett MS. 14 and Garrett MS. 16 extend to Garrett MS. 16A which was likely once a part of Garrett MS. 14 and at some point in time may have been rebound to Garrett MS. 16.

32. With respect to Princeton MS. 81, Princeton states in the Princeton Catalog that it remained at the Monastery from the time it was written in the sixteenth century until 1917, the year of the theft. Ex. A at A34.

79473746_25

### E. Princeton's Acquisition of the Manuscripts

33. According to the Princeton Catalog, Robert Garrett purchased both Garrett MS. 14 and Garrett MS. 16 from the Baer Auction House in 1924. Garrett MS. 16A was also part of this sale either as part of Garrett MS. 14 or as part of Garrett MS. 16 to which it was likely rebound. *See supra* ¶ 18. Robert Garrett donated these Manuscripts to Princeton in 1942. *See supra* ¶¶ 29-30.

34. According to the Princeton Catalog, "[i]n 1920-21 [Princeton MS. 81] was listed in the catalogue of the [Baer Auction House]. In 1921 Baer sold the manuscript to the Princeton University Library." Ex. A at A34.

35. On December 4, 2015, the Patriarchate sent a demand letter to Princeton seeking return of the Manuscripts. A copy of this letter is attached as Exhibit D. Despite the request, Princeton has failed to return the Manuscripts, necessitating this action.

## V.

## CAUSES OF ACTION

### Count I
### (Replevin)

36. The Patriarchate repeats and realleges each and every allegation set forth in paragraphs 1 through 35 above with the same force and effect as if fully set forth herein.

37. At all relevant times, the Patriarchate was and still is the owner entitled to the immediate possession of the Manuscripts, and has a superior and exclusive right to the immediate possession of the Manuscripts.

38. The Manuscripts are unique and invaluable chattels containing hallowed writings that are cherished and revered by the Eastern Orthodox Christian Church.

39. Ownership of, or title to, the Manuscripts was not transferred from the Patriarchate to Princeton through the events and transactions described herein, and any purported transfer of ownership or title to Princeton is voidable and void *ab initio*.

40. Princeton did not obtain, and does not have, good or valid title to the Manuscripts.

41. Princeton's possession and control of the Manuscripts is without legal basis or right and the Patriarchate, as the rightful owner of the Manuscripts, is entitled to the return of the Manuscripts.

42. The Patriarchate has made demand on Princeton for return of the Manuscripts. Princeton has improperly and without justification refused to return the Manuscripts.

43. Accordingly, the Patriarchate seeks a judgment that: (i) the Patriarchate is the rightful owner of the Manuscripts; (ii) the Patriarchate is entitled to the immediate possession of the Manuscripts; and (iii) Princeton deliver the Manuscripts to the Patriarchate.

### Count II
### (Declaration of Ownership)

44. The Patriarchate repeats and realleges each and every allegation set forth in paragraphs 1 through 43 above with the same force and effect as if fully set forth herein.

45. There is an actual controversy between the parties concerning ownership, title to, and right to possession of movable property, namely the Manuscripts.

46. The Patriarchate is the sole and true owner of all title and interest in the Manuscripts.

47. Princeton holds no title, and has never held title, in or to the Manuscripts, and any title that Princeton purports to have acquired is void or voidable.

48. Accordingly, the Patriarchate is entitled pursuant to 28 U.S.C. §§ 2201 and 2202 to a declaratory judgment that it is the rightful owner of the Manuscripts, and has superior title and exclusive right to immediate possession of the Manuscripts.

### Count III (Alternative Count)
### (Conversion)

49. The Patriarch repeats and realleges each and every allegation set forth in paragraphs 1 through 48 above with the same force and effect as if fully set forth within.

50. As an alternative to Count I in the event Princeton cannot or does not return the Manuscripts to the Patriarchate in the condition they were received in, the Patriarch seeks damages for Princeton's conversion of the Manuscripts.

51. At all relevant times, the Patriarchate has had a complete right of ownership in, and complete right to possess, the Manuscripts, and has a superior and exclusive right to immediate possession of the Manuscripts.

52. Princeton has never had good or valid title in the Manuscripts.

53. Despite the Patriarchate's demand for the return of the Manuscripts, Princeton has improperly refused to return the Manuscripts.

54. Princeton has therefore converted the Manuscripts to its own use and benefit to the detriment of the Patriarchate's ownership of and possessory rights to the Manuscripts.

55. Princeton's intentional exercise of dominion and control over the Manuscripts has been wrongful and without authority or consent of the true owner.

56. The refusal to return the Patriarchate's property is unlawful and gives rise to this claim for conversion.

79473746_25

57. As a result of Princeton's conversion, the Patriarchate is entitled to damages against Princeton measured by the current market value of the Manuscripts, all in an amount to be determined at trial but in no event less than $75,000, plus costs, interest, and attorneys' fees.

58. In the event the Manuscripts have been impaired in any way in condition, quality, or value since they were acquired by or in the possession of Princeton or if they cannot be, or are not, returned for any reason, the Patriarchate is entitled to be compensated for such damage or loss.

## VI.

## **RELIEF REQUESTED**

WHEREFORE, the Patriarchate respectfully prays for:

i) A trial by jury;

ii) On Count I, judgment against Princeton that the Patriarchate is the owner and entitled to the immediate possession of the Manuscripts and that Princeton must deliver the Manuscripts to the Patriarchate forthwith, with costs and attorneys' fees;

iii) On Count II, declaration that the Patriarchate is the owner of the Manuscripts and has superior title and exclusive right to immediate possession of the Manuscripts, with costs and attorneys' fees;

iv) On Count III, in the event that the Manuscripts have been impaired in any way in condition, quality, or value since they were acquired by or in the possession of Princeton, or if they cannot be returned for any reason, a judgment awarding to the Patriarchate its actual damages from Princeton, in an amount to be determined at trial, to compensate the Patriarchate for loss of use and value of the Manuscripts, and as

79473746_25

    compensation for any damage to the Manuscripts while they were in Princeton's possession or control.

v)  That the Court award the Patriarchate such other and further relief as the Court deems just and proper, along with costs and attorneys' fees.

Dated: New York, New York
December 13, 2018

HUGHES HUBBARD & REED LLP

By: _____
George A. Tsougarakis

*s/Eric Blumenfeld*
Eric Blumenfeld

Of Counsel

Michael E. Salzman
Pavlos Petrovas
(*motions for admission pro hac vice to be filed*)
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, NY 10004
Telephone: 212-837-6000

*Attorneys for Plaintiff*

79473746_25

**VERIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2**

The undersigned, George A. Tsougarakis, hereby certifies pursuant to 28 U.S.C. § 1746 that the matter in controversy is not the subject of any other action pending in any court or the subject of any pending arbitration or administrative proceeding.

I certify under penalty of perjury that the foregoing is true and correct.

Executed on: December 13, 2018

_____
George A. Tsougarakis

79473746_25