UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| HIS ALL HOLINESS, BARTHOLOMEW I, THE ARCHBISHOP OF CONSTANTINOPLE, NEW ROME, AND ECUMENICAL PATRIARCH; THE HOLY METROPOLIS OF DRAMA; and THE MONASTERY OF THEOTOKOS EIKOSIPHOINISSA,<br><br>                          Plaintiffs,<br><br>                vs.<br><br>PRINCETON UNIVERSITY<br><br>                          Defendant. | Civil Action No. 3:18-CV-17195-MAS-ZNQ<br><br>Honorable Judge Michael A. Shipp, U.S.D.J. |

**STIPULATION AND ORDER REGARDING PRODUCTION OF
DOCUMENTS AND ELECTRONICALLY STORED INFORMATION**

This Order sets forth the protocol for the production and inspection of documents, both hard-copy documents and electronically stored information ("ESI"), by and between the Parties in the action captioned above (the "Action").

**I.     GENERAL**

1.     This Order will streamline Document and ESI (defined below) discovery to best carry out the requirements set forth in the Local Civil Rules of U.S. District Court for the District of New Jersey and the Federal Rules of Civil Procedure.

2.     The Parties shall take all reasonable steps to comply with the protocols set forth herein.

3.     Except as specifically limited herein, this Order governs the production and inspection of discoverable Documents and ESI by the Parties during the Action. In the event of transfer to other courts, this Order will remain in effect in all respects, until adopted by the transferee court or replaced by a successor Order.

11059071.1

4.     This Order shall not enlarge or affect the proper scope of discovery in this Action, nor imply that discovery produced under the terms of this Order is properly discoverable, relevant, or admissible in this or in any other litigation.  This Order does not alter or expand the preservation obligations of the Parties.  And nothing in this Order shall be interpreted to require disclosure of materials that are not discoverable or are protected from disclosure by federal rule, the attorney-client privilege, the attorney work-product doctrine, and/or any other privilege that may be applicable and valid.

5.     The Parties agree to abide by the terms of this Order in good faith and they agree to promptly alert all other Parties concerning any technical problems associated with complying with this Order.  To the extent compliance with this Order imposes an undue burden, the Parties shall promptly confer in an effort to resolve the issue or issues.

6.     Consistent with their obligations under the Local Civil Rules and the Federal Rules of Civil Procedure, the Parties will attempt to resolve, in person, in writing (including e-mail) or by telephone, disputes regarding the issues set forth herein prior to filing any motion with the Court, or otherwise seeking similar relief.  If the Parties are unable to resolve the dispute after a good faith effort, the Parties may seek Court intervention in accordance with the Court's procedures.

**II.    DEFINITIONS**

1.     **"Document"** is defined to be synonymous in meaning and equal in scope to the usage of this term in the Federal Rules of Civil Procedure.  The term "Document" shall include Hard-Copy Documents, Electronic Documents, and ESI as defined herein.

2.     **"Electronic Document or Data"** means Documents or Data existing in electronic form including but not limited to: e-mail or other means of electronic communications, word processing files (*e.g.*, Microsoft Word), computer presentations (*e.g.*, PowerPoint slides), spreadsheets (*e.g.*, Excel), and image files (*e.g.*, PDF).

3. **"Electronically stored information"** or **"ESI,"** as used herein, has the same meaning as in the Federal Rules of Civil Procedure.

4. **"Hard-Copy Document"** means Documents existing in tangible form, including but not limited to paper Documents.

5. **"Ancient Document"** means Hard-Copy Documents that are over thirty years old and exist solely in paper format. These documents may be fragile, not susceptible to digital imaging, and/or exist in special formats or locations that would make traditional forms of collection and production overly burdensome or impossible.

6. **"Native Format"** means and refers to the format of ESI in which it was generated and/or as used by the producing party in the usual course of its business and in its regularly conducted activities.

7. **"Metadata"** means: (i) information embedded in or associated with a file that is not ordinarily viewable or printable from the application that generated, edited, or modified such native file which describes the characteristics, origins, custody, usage, and/or validity of the electronic file; and/or (ii) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system.

8. **"Media"** means an object or device, real or virtual, including but not limited to a disc, tape, computer, or other device on which data is or was stored.

9. **"Optical Character Recognition"** or **"OCR"** means the optical character recognition file which is created by software used in conjunction with a scanner that is capable of reading text-based Documents and making such Documents searchable using appropriate software.

10.     **"Hash Value"** is a unique numerical identifier that can be assigned to a file, a group of files, or a portion of a file, based on a standard mathematical algorithm applied to the characteristics of the data set. The most commonly used algorithms, known as MD5 and SHA, will generate numerical values so distinctive that the chance that any two data sets will have the same Hash Value, no matter how similar they appear, is less than one in one billion. "Hashing" is used to guarantee the authenticity of an original data set and can be used as a digital equivalent of the Bates stamp used in Hard-Copy Document productions.

11.     **"Confidentiality Designation"** means the legend affixed to Documents and ESI or provided in the "Confidentiality" metadata field pursuant to Section V, Paragraph 1 below for Confidential Discovery Information as defined by, and subject to, the terms of the Parties' Stipulated Discovery Confidentiality Order in the Action.

12.     **"Searchable Text"** means the native text extracted from an Electronic Document or any Optical Character Recognition text (**"OCR text"**) generated from a Hard-Copy Document or electronic image.

13.     **"Load file"** means an electronic file provided with a production set of document images that facilitate the loading of such information into a receiving party's document review platform, and the correlation of such data in the platform.

14.     **"Unitization"** means a set of paper-scanned images or electronically processed files and indicates where individual pages or files belong together as Documents, including attachments, and where each Document begins and ends.

**III.    DATA SOURCES AND CULLING CRITERIA**

1.      **Custodians.** Each side is respectively responsible for identifying all custodians within their organizations who are likely to have responsive Documents and/or ESI based on the requests for production already served. Each Party shall disclose the identity of each of its

custodians to the other Party before the initial collection of documents and ESI from that custodian. If the initial collection of documents and ESI has already taken place at the time that this Order is entered, then the Parties shall disclose the identities of those custodians for which collection has taken place within ten (10) business days of the entry of this Order. Where possible, the Parties shall conduct attorney-guided collection interviews with each of their own custodians to identify all reasonably accessible sources of ESI and Hard Copy documents for each custodian. Subject to the Parties' objections and responses to requests for production of Documents and ESI, and subject to the Parties' Stipulated Discovery Confidentiality Order, the Parties shall begin producing responsive, non-privileged Documents and ESI, on a rolling basis, from the files of the custodians. Either Party may move the Court to seek collection of documents and ESI from additional custodians for good cause shown. For such motions, the movant will bear the burden of showing good cause.

2. **Non-Custodial Sources**. Each side is respectively responsible for identifying all reasonably accessible-non-custodial sources—such as archives, department files, church files, monastery files, shared drives, hard drives, electronic databases, or document management systems (such as eRooms, SharePoint, or Documentum)—that will be reasonably searched to identify potentially responsive or relevant Documents or ESI. Subject to the Parties' objections and responses to requests for production of Documents and ESI, and subject to the Parties' Stipulated Discovery Confidentiality Order, the Parties shall begin producing responsive, non-privileged Documents and ESI, on a rolling basis, from the identified non-custodial sources. Each Party shall disclose to the other Party each non-custodial source before the initial collection of documents and ESI from that source. If the initial collection has already taken place at the time that this Order is entered, then the Parties shall disclose to the other Party those non-

custodial sources for which collection has taken place within ten (10) business days of the entry of this Order.

3.  **Foreign Documents.**  To the extent required under applicable United States law, and the Federal Rules, the producing parties shall agree to abide by all applicable foreign data protection laws and regulations.  Where possible the Parties will seek to locate relevant data from a source within the United States to the extent it is duplicative of data otherwise maintained outside of the United States.  Where United States data protection laws and foreign data protection laws conflict, the Parties agree to meet and confer to try to avoid the violation of foreign law prior to the filing of any motion.

4.  **Search Queries and Methodologies**.  With respect to requests for production already served, each side is respectively responsible for initially performing searches and developing appropriate methodologies to find relevant documents and ESI. If the initial searches and collection of documents and ESI has already taken place at the time that this Order is entered, then within ten (10) business days of the entry of this Order, the parties shall disclose the custodians and/or data sources collected from, and the search terms used for the collection that has already taken place. If initial searches have not been performed, then the party shall disclose the search terms used (if any) before the initial collection of documents and ESI from the various custodial and non-custodial sources. For initial searches already performed, the parties agree to meet and confer over whether additional search queries or additional custodial or non-custodial collections are appropriate and, in the event of an impasse, either party may move the Court to seek additional collection of documents and ESI, and/or run additional search queries for good cause shown.

For all future requests for production, the Parties agree that they will cooperate in good faith regarding the formulation of appropriate search queries and methods to be used to cull potentially responsive or relevant ESI. The Parties will continue to meet and confer regarding any search process issues as necessary and appropriate. The Parties may agree to modify the search queries or the search methodologies during the course of the search query negotiation process if the search queries or the results of search methodologies appear under-inclusive or over-inclusive. After the Parties agree upon a final list of search queries, no search queries will be added to the list absent written agreement by the Parties or, if the Parties reach an impasse after meeting and conferring in good faith, by Court order.

5. **System Files**. The Parties may exclude certain files and folders that are reasonably identified as system files and not likely to contain user-created files.

6. **Global De-Duplication**. A Party is only required to produce a single copy of a responsive Document, and a Party shall make reasonable efforts to de-duplicate responsive Documents and ESI (based on MD5 or SHA-1 Hash Values at the document level) across custodians. For e-mail messages with attachments, the Hash Value shall be generated based on the parent-child document grouping, and only e-mail messages in which the parent document and all attachments are exactly the same will be considered duplicates. However, Metadata identifying all custodians in possession of each document that is removed as a duplicate must be produced, where available, in the "CUSTODIAN" field in the production Load File. In addition, Outlook .ost files are excluded from processing as duplicative of Outlook .pst files.

IV. **PRESERVATION**

1. The Parties acknowledge that they have an obligation to take reasonable and proportional steps to preserve discoverable information in the Party's possession, custody or control.

11059071.1

2. The Parties agree that certain sources of information are not reasonably accessible, and therefore need not be collected. The Parties agree that the following Documents or ESI is not reasonably accessible:

   a) Shadowed, damaged, residual, slack, fragmented, or other data only accessible by forensics.

   b) Random access memory (RAM), temporary files, or other ephemeral data that is difficult to preserve without disabling the operating system.

   c) On-line access data such as temporary Internet files, history, cache, cookies, and the like.

   d) Data stored on photocopiers, scanners and fax machines.

   e) Data in metadata fields that are frequently updated automatically, such as last-opened dates, except that metadata shall be produced in accordance with Section V, Paragraph 1.

   f) Data maintained or duplicated from or in any electronic system used for the purpose of system recovery, including, but not limited to, system recovery backup or other media, continuity of operations systems, disaster recovery and data or system mirrors or shadows. No Party is obligated to preserve or collect from system-recovery tapes as outlined above.

   g) Information posted solely to social media, such as Facebook, Twitter, Instagram, Tumblr and the like.

   h) Server logs, system logs, or network logs.

   i) Voicemail messages.

   j) Text messages sent and received via telephone, such as SMS or Apple iMessage.

   k) Instant message or "chat" messages which reside solely in the messenger program's cache or other automatic backup.

   l) Data remaining from systems no longer in use that is unintelligible on any system.

   m) Logs of calls made from cellular or landline phones.

11059071.1

## V.   FORMAT OF PRODUCTION

1.   **Non-Redacted Electronically Stored Information Not Produced in Native Form.** Non-redacted ESI should be produced in a form no less "searchable" than it is maintained in the normal course of the producing party's business. ESI will be produced in single-page, black and white, 300 DPI, Group IV TIFF image file format together with Load Files (OPT files) (depending on the preference of the requesting party). Conversion of Word documents: When Word documents are converted to TIFFs, the version that will be converted is as it was last saved and with track changes turned on. This means the images and extracted text will reflect the track changes. Conversion of Microsoft Office document types to TIFF shall reflect comments, speaker notes, footers, headers and track changes. Non-redacted ESI shall be produced with searchable extracted text of the entire Document (at the document level in a .TXT file) and the following Metadata fields in a .DAT file, where applicable:

| FIELD NAME | SAMPLE DATA | FIELD DESCRIPTION | APPLICABLE FILE TYPE(S) |
|---|---|---|---|
| BEGBATES | ABC000001 | Beginning production number or Bates number for a given file/document | E-mail and E-Doc |
| ENDBATES | ABC000002 | Ending production number or Bates number for a given file/document | E-mail and E-Doc |
| BEGATTACH | ABC000001 | Beginning production number or Bates number for the attachment range | E-mail and E-Doc |
| ENDATTACH | ABC000015 | Ending production number or Bates number for the attachment range | E-mail and E-Doc |

| FIELD NAME | SAMPLE DATA | FIELD DESCRIPTION | APPLICABLE FILE TYPE(S) |
|---|---|---|---|
| ATTACHRANGE | ABC000001 – ABC000015 | Production number of first page of attachment range through last page of attachment range All Electronic Documents attached to an e-mail will be produced contemporaneously and sequentially immediately after the parent e-mail. | E-mail and E-Doc |
| CUSTODIAN(S) | Smith, John; Brown, Julie | Custodial source(s) of documents, including documents not produced due to de-duplication. | All |
| SUBJECT | Meeting Minutes | Subject line extracted from e-mail message or title from operating system metadata | E-mail and E-Doc |
| FROM | Smith, John | Sender | E-mail |
| TO | Jones, Tom; Brown, Julie | Recipient | E-mail |
| CC | Cain, John | Copyee | E-mail |
| BCC | Stevens, Lisa | Blind Copyee | E-mail |
| DATESENT | 02/08/2008 | Sent date of an e-mail message in the following format: MM/dd/yyyy. | E-mail |
| TIMESENT | 08:59 EST | Sent time of an e-mail message in the following format: HH:mm zzz mm is minutes zzz is the time zone the data was processed in. | E-mail |
| DATERCVD | 02/08/2008 | Received date an e-mail message was received in the following format: MM/dd/yyyy. | E-mail |
| TIMERCVD | 08:59 EST | Received time an e-mail message was received in the following format: HH:mm zzz mm is minutes zzz is the time zone the data was processed in. | E-mail |

11059071.1

| FIELD NAME | SAMPLE DATA | FIELD DESCRIPTION | APPLICABLE FILE TYPE(S) |
|---|---|---|---|
| AUTHOR* | Smith, John | Name of person who created document<br>*Parties acknowledge that the Author field may not actually be the Author of the document. | E-Doc |
| FILENAME | October Agenda.doc | Original file name of native document | E-Doc |
| FILE PATH(S) | C:\My Documents\Agenda | Pathway(s) for documents | E-mail and E-Doc |
| TEXT PATH | D:001\RET000005.txt | Relative path to document level text file | E-mail and E-Doc |
| DATECREATED | 02/08/2008 | Date document was created in the following format MM/dd/yyyy .<br><br>Parties acknowledge that the Date Created field may not actually be the Date Created due to the ease of change to that field and the technical definitely of the field (*e.g.*, the created date reflects the date when the file was created in that particular location on the computer or on the other storage device location) | E-Doc |

11059071.1

| FIELD NAME | SAMPLE DATA | FIELD DESCRIPTION | APPLICABLE FILE TYPE(S) |
|---|---|---|---|
| TIMECREATED | 08:59 EST | Time document was created in the following format HH:mm zzz<br>mm is minutes<br>zzz is the time zone the data was processed in.<br><br>Parties acknowledge that the Time Created field may not actually be the Time Created due to the ease of change to that field and the technical definitely of the field (*e.g.*, the created time reflects the time when the file was created in that particular location on the computer or on the other storage device location) | E-Doc |
| FILEEXT | Msg | File extension of native document | E-mail and E-Doc |
| FILESIZE | 50kb | Size of the original e-mail message or e-doc | E-mail and E-Doc |
| DOCUMENTTYPE | Application/msword | Describes the type of document. (mime type) | E-mail and E-Doc |
| PAGECOUNT | 16 | Number of pages for the document | All |
| HASH | d131dd02c5e6eec5694d0698aff85c2fsch5876217eab40045733b8fb789 | MD5 or SHA1 Hash Value | E-mail and E-Doc |
| NATIVEFILE PATH | D:\001\ABC000005.xls | Path or hyperlink to documents being produced in native file format | Native |
| CONFIDENTIALITY | Confidential | Indicates the confidentiality designation of the produced document pursuant to any applicable Discovery Confidentiality Order | All |

11059071.1

This list of fields does not create any obligation to create or manually code fields that are not automatically generated by the processing of the ESI or that do not exist as part of the original Metadata of the Document. The Parties acknowledge there can be differences between the Operating System (Windows) and Application date/time fields and also agree that the producing party has no obligation to try and reconcile the differences, if any.

If documents, such as electronic mail, are produced, the relationship between related documents (*e.g.*, e-mail attachments) should be preserved. All Electronic Documents attached to an e-mail message are produced contemporaneously and sequentially immediately after the parent e-mail message. Parties may request the production of Documents or ESI in Native form by Bates number in the event that a Document or ESI produced in TIFF form is illegible.

2.   **ESI to be Produced in Native Form**.   Non-redacted Microsoft Excel or other spreadsheet files, Microsoft PowerPoint files, video files, audio files, or other similar file formats where an image file does not adequately represent the files as maintained in the ordinary course, shall be produced in their Native Format, including the formulae embedded in the spreadsheet and any Metadata contained in the file. Files produced in Native Format shall be named either with a sequential Bates number followed by the file name or with a sequential Bates number followed by the Confidentiality Designation, if applicable, and the file name. A placeholder TIFF with the original file name, the language "Document Produced in Native Format" (or similar language), and stamped with assigned Bates number and confidentiality designation shall be included for each native file produced. To the extent native files, including electronic spreadsheets or presentations, are redacted, production shall be made in TIFF format in accordance with the section on redacted document and not in Native Format.

11059071.1

3. **Redacted Documents**. The Parties may redact Documents or ESI on the following bases: personal information (*e.g.*, social security numbers, personal cell phone numbers, bank accounts etc.), attorney-client privilege, attorney work-product privilege, and for GDPR-related privacy information. If the receiving Party finds a document to be incomprehensible or unintelligible because of a redaction, the Parties will meet and confer to try in good faith to resolve the dispute. For redacted electronic files, and redacted Hard-Copy Documents, the Parties agree to produce ESI and Hard-Copy Documents as redacted single-page, black and white, 300 DPI, Group IV TIFF image file format together with applicable Load Files (depending on the preference of the requesting party), with Metadata in the dat. file. All Electronic Documents attached to an e-mail message are to be produced contemporaneously and sequentially immediately after the parent e-mail message. The Metadata fields for a redacted Document or ESI will include BEGBATES, ENDBATES, BEGATTACH, ENDATTACH, CUSTODIAN, TEXT (which shall contain the OCR or Optical Character Recognition text so as not to reveal redacted text), DATE, TO, FROM, BCC and CC fields. To the extent Documents or ESI have been de-duplicated, the CUSTODIAN field shall list all custodians that had possession of the Document.

4. **Hard-Copy Documents**. Hard-Copy Documents should be produced as single-page, black and white, 300 DPI, Group IV TIFF image file format together with applicable Load Files (depending on the preference of the requesting party) with coded data contained in a separate file. The producing party shall also provide document-level OCR text files to accompany the TIFF format production, if the document is capable of being scanned for OCR. Hard-Copy Documents that are handwritten or are primarily composed of images will be presumed not to be capable of being scanned for OCR. The minimum fields for a scanned Hard-Copy Document

11059071.1

record will be BEGBATES, ENDBATES, BEGATTACH, ENDATTACH, CUSTODIAN, and TEXT, indicating the beginning and ending Bates numbers, attachments ranges of all documents, the custodian information, and the OCR text.

5. **Ancient Documents.** Ancient Documents may be produced by a Party taking images of such documents and producing those image files. Due to foreign language, handwriting, and other factors, the image files of Ancient Documents may not be OCR-searchable. This provision does not affect the Parties' right to physically inspect Ancient Documents under Federal Rule of Civil Procedure 34 or any other applicable law.

6. **Document Unitization for Hard-Copy Documents**. If a Hard-Copy Document consists of more than one page, the Unitization of the Document and any attachments and/or affixed notes shall be maintained as it existed in the original Document, so that each page will not be split, but instead sequenced and saved together, as they existed in the original.

7. **Non-Custodial Documents**. For documents and ESI from non-custodial sources, the Parties shall cooperate to produce responsive Documents and ESI in a reasonably useable production format.

8. **Searchable Text**. The Parties agree that they will produce Searchable Text for all Electronic Documents and Electronic Data produced, with the exception of scanned Hard Copy Documents and Ancient Documents. For all non-redacted ESI, the searchable text will be extracted directly from the native file. For any document where text has been redacted, Searchable Text will be provided for the non-redacted text, if possible.

9. **Bates Numbering**. Each page of a produced image shall have a unique Bates number electronically "burned" onto the image at a location that does not unreasonably obliterate or obscure any information from the source Document. Each TIFF image or native file assigned a

11059071.1

Bates number shall be assigned a Bates number that is unique and maintains a constant length across the entire document production. No other legend or stamp will be placed on the document image other than confidentiality legends (where applicable) or redactions.

10.     **No Color**. Documents and ESI in color need not be produced in color. A Party may request by bates-number that up to 50 specifically-identified documents be produced in a color .PDF or .JPG format.

11.     **Foreign Language Documents**. To the extent that Documents or ESI are produced that contain languages other than English, in whole or in part, the producing party shall produce all foreign language documents and ESI in the original language. The producing party has no obligation to provide a translation or summary of the Document or ESI or any portion thereof.

12.     **Production Media**. Documents shall be produced on CDs, DVDs, USB hard drives, portable hard drives or through secure file transfer protocols (*e.g.*, FTP) or similar secure electronic transmission. The Production Media shall be labeled with the Volume Number along with the Bates Number range(s) of the materials, and where not practicable to do so, may be provided in an accompanying letter.

13.     **Replacements.** All files that are replaced for any reason must be annotated with an "R" designation appended to the Bates prefix. A cross reference file will be provided identifying the document's original Bates and its replacement Bates number.

**VI.    PRIVILEGE AND WORK PRODUCT CLAIMS**

1.      **Privilege Log.** The Parties recognize that some Documents may be redacted or withheld on the grounds of attorney-client privilege, work-product doctrine, or other applicable privilege or immunity from disclosure (collectively, "privilege"), including any legal holds issued during the course of this Action. For each responsive Document withheld or redacted because of

11059071.1

privilege, the producing party's privilege/redaction logs shall include the following information to the extent it is reasonably available:

    a) Custodian or source: states the name of the person(s) or non-custodial source from which the document was collected;

    b) Date of the Document, or if no date appears, the date(s) on which it was prepared, sent, or received;

    c) Author(s);

    d) For Documents produced, but redacted on the ground of privilege, the starting and end Bates number;

    e) Recipient(s), CC(s), BCC(s) (for e-mail and hard-copy communication such as letters and internal memoranda);

    f) General description of the nature and subject matter of the Document;

    g) Specification of the privilege claimed;

    h) The basis for the privilege claim.

When the document is an e-mail thread containing one or more separate e-mail messages, it shall be logged as one entry, and the Date, Author and Recipient(s), CC(s) and BCC(s) fields on the log can be populated from the top line e-mail message as long as the Party withholding documents adequately describes the basis of the privilege claim. Each document within a family for which a Party claims a privilege shall be separately logged or otherwise accounted for. The Parties agree that a Party need not include on its privilege log any document or communication for which the Party asserts privileged that is (i) dated after the commencement of this litigation; and (ii) and covered by the attorney-client privilege, attorney work product protection, and/or any other applicable privilege or protection. If any disputes arise concerning any privilege log, the Parties shall meet and confer to try to reach a mutually agreeable solution. If they cannot agree, the matter may be brought to the Court.

11059071.1

2. **Inadvertent Disclosure of Protected Documents**. Consistent with the Federal Rules of Civil Procedure, neither the attorney-client privilege nor the work product protection is waived by disclosure connected with this Action. The inadvertent or unintentional production of privileged or work product protected documents, Electronically Stored Information, or other information is not a waiver of the privilege protection in this case or in any other related proceeding or otherwise. Nothing in this Order shall be construed to prohibit a producing party from seeking relief from any inadvertent or unintentional disclosure of confidential, privileged, or work-product information. Nothing in this Order shall diminish the legal rights of any person seeking such relief. The procedure for remedying an inadvertent disclosure in this Action is set forth in a separate Stipulation and Consent Order pursuant to Federal Rule of Evidence 502(d) entered in this Action.

## VII. MISCELLANEOUS

1. **Good Faith**. The Parties shall make their best efforts to comply with and resolve any differences concerning compliance with this Order. If a producing party cannot comply with any material aspect of this Order, such Party shall inform the requesting party in writing at or before the time of production as to why compliance with the Order was unreasonable or not possible. No Party may seek relief from the Court concerning compliance with the Order unless it has first conferred with other affected Parties to this Action.

2. **No Effect on Discovery or Admissibility**. This Order does not address, limit, or determine the relevance, discoverability, agreement to produce, or admissibility of ESI. Nothing in this Order shall be construed to affect the admissibility of any document or any data. All objections to the admissibility of any document or any data, except as to the authenticity of the documents produced by a Party as to which that Party stipulates, are preserved and may be asserted at any time.

11059071.1

3. **Protective Order.** All documents produced by the Parties will be subject to the terms of the Stipulated Discovery Confidentiality Order entered in this Action.

**IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.**

HUGHES HUBBARD & REED LLP  
Attorneys for Plaintiffs

WONG & FLEMING PC  
Attorneys for Defendant

By: *s/George A. Tsougarakis*  
George A. Tsougarakis

By: *s/Linda Wong* **(with permission)**  
Linda Wong

Dated: July 23, 2019

Dated: July 19, 2019

**APPROVED AND SO ORDERED** this 24th day of July, 2019.

_____  
**HONORABLE ZAHID N. QURAISHI**  
**UNITED STATES MAGISTRATE JUDGE**

11059071.1