<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| HIS ALL HOLINESS, BARTHOLOMEW I, THE ARCHBISHOP OF CONSTANTINOPLE, NEW ROME, AND ECUMENICAL PATRIARCH; THE HOLY METROPOLIS OF DRAMA; and THE MONASTERY OF THEOTOKOS EIKOSIPHOINISSA, <br><br> Plaintiffs, <br><br> v. <br><br> PRINCETON UNIVERSITY, <br><br> Defendant. | Civil Action No. 18-17195 (MAS) (ZNQ) <br><br> **MEMORANDUM OPINION** |

<u>**SHIPP, District Judge**</u>

    This matter comes before the Court upon Plaintiffs His All Holiness, Bartholomew I, the

Archbishop Of Constantinople, New Rome, and Ecumenical Patriarch (the "Patriarch"); the Holy

Metropolis of Drama (the "Metropolis"); and the Monastery of the Theotokos Eikosiphoinissa's

(the "Monastery") (collectively, "Plaintiffs") Motion to Dismiss pursuant to Federal Rule of Civil

Procedure 41(a)(2).[1] (ECF No. 30.) Defendant Princeton University ("Defendant" or "Princeton")

opposed (ECF No. 38), and Plaintiffs replied (ECF No. 42). The Court has carefully considered

the parties' submissions and decides the matter without oral argument pursuant to Local Civil

---

[1] Unless otherwise noted, all references to a "Rule" or "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

Rule 78.1. For the reasons set forth in this Memorandum Opinion, Plaintiffs' Motion is granted in part.

## I.   BACKGROUND

Plaintiffs initiated this action to recover four religious manuscripts (the "Manuscripts") in Princeton's possession. (Compl. ¶ 1, ECF No. 1.) Plaintiffs allege that the Manuscripts were housed in the Monastery's library in Northern Greece for centuries until Bulgarian forces stole them on March 27, 1917. (*Id.*) In 1921, Princeton purchased one of the Manuscripts from the Frankfurt-based auction house Joseph Baer & Co. (the "Baer Auction House"). (*Id.* ¶ 2.) In 1924, Robert Garrett, a Princeton trustee and alumnus purchased the other three Manuscripts from the Baer Auction House and donated them to Princeton. (*Id.*)

On December 14, 2015, the Patriarch sent a demand letter to Princeton seeking the return of the Manuscripts. (*Id.* ¶ 35.) Despite the request, Princeton did not return the Manuscripts. (*Id.*) On December 13, 2018, Plaintiffs filed this Complaint alleging three Counts: (1) Replevin; (2) Declaration of ownership; and (3) Conversion. (*Id.* ¶¶ 36–58.) On December 13, 2019, Plaintiffs filed the present Motion, seeking to dismiss the Patriarch and the Metropolis's claims with prejudice pursuant to Rule 41(a)(2). (Pls.' Moving Br. 4, ECF No. 30-1.)

## II.   LEGAL STANDARD

Once an answer has been filed, "an action may be dismissed at the plaintiff[s'] request only by court order, on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2). "[T]he decision to allow voluntary dismissal is left to the sound discretion of the district court." *Hayden v. Westfield Ins. Co.*, 586 F. App'x 835, 842 (3d Cir. 2014) (citing *Ferguson v. Eakle*, 492 F.2d 26, 29 (3d Cir. 1974)). "The purpose of the grant of discretion under Rule 41(a)(2) . . . is primarily to prevent voluntary dismissals which unfairly affect the other side, and to permit the imposition of curative

conditions . . . ." 9 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2364 (3d ed.) (internal quotation marks omitted). Indeed, the Third Circuit has "acknowledged a district court's ability to attach conditions to Rule 41(a)(2) dismissal orders." *Carroll v. E One Inc.*, 893 F.3d 139, 146 (3d Cir. 2018).

   "Rule 41 motions should be allowed unless [the] defendant will suffer some prejudice other than the mere prospect of a second lawsuit." *In re Paoli R.R. Yard PCB Litig.*, 916 F.2d 829, 863 (3d Cir. 1990) (internal quotation marks omitted). In other words, "[t]he lynchpin of a voluntary dismissal motion is whether the defendant will be prejudiced." *Emmanouil v. Mita Mgmt., LLC*, No. 11-5575, 2015 WL 5023049, at *3 (D.N.J. Aug. 24, 2015). To that end, "a court must examine the prejudice to the defendant, both in terms of legal prejudice and litigation expense." *Williamson v. Daiichi Sankyo, Inc.*, No. 15-2606, 2017 WL 2226734, at *2 (D.N.J. May 22, 2017) (internal quotation marks and citation omitted); *Worrell v. Harshe*, No. 16-2398, 2017 WL 4419240, at *3 (D.N.J. Oct. 5, 2017). Factors relevant to this analysis include:

> (1) the excessive and duplicative expense of a second litigation; (2) the effort and expense incurred by defendants in preparing for trial; (3) the extent to which the current suit has progressed; (4) plaintiffs' diligence in bringing the motion to dismiss and the rationale for it; and (5) the pendency of a dispositive motion by the non-moving party.

*Id.*; *see also Sporn v. Ocean Colony Condo. Ass'n*, 173 F. Supp. 2d 244, 255 (D.N.J. 2001).[2]

---

[2] Moving Plaintiffs argue that the Court's discretion is limited where dismissal is with prejudice. (Pls.' Reply Br. 4–5, ECF No. 42.) But the Court only lacks discretion where "dismissal with prejudice would *dispose entirely of a case*." *Sheridan v. Fox*, 531 F. Supp. 151, 155 (E.D. Pa. 1982) (emphasis added); *see also John Evans Sons, Inc. v. Majik–Ironers, Inc.*, 95 F.R.D. 186, 190–91 (E.D. Pa. 1982) ("A different situation may be presented where the plaintiff moves to dismiss with prejudice. A trial court may abuse its discretion in denying such a motion *where dismissal would terminate the entire action* since courts should not conduct useless trials." (emphasis added) (citation omitted)). Here, the Court's discretion is not so limited because, even if the Patriarch and Metropolis are no longer in the case, the Monastery nonetheless remains.

### III.   **DISCUSSION**

Plaintiffs seek voluntary dismissal of the Patriarch and the Metropolis's claims because, "having completed the bulk of written and document discovery, Plaintiffs believe that the sole and proper plaintiff in this lawsuit is the Monastery, as the owner of the Manuscripts, and that having one plaintiff will streamline the remainder of discovery, dispositive motions, and trials." (Pls.' Moving Br. 2.)

Defendant argues that it will suffer legal prejudice if it is unable to obtain "case-dispositive discovery" from the Patriarch and the Metropolis. (Def.'s Moving Br. at 8–9, ECF No. 38.) According to Defendant, "in October 2019, Plaintiffs formally disclosed that the late Metropolitan of Drama, Dionysios, the former leader of the Metropolis, [(the "Metropolitan")] was put in charge of 'revitalizing the Monastery's efforts' from 1965 [to] 2005 to 'search for the manuscripts stolen from the Monastery in 1917.' (Def.'s Moving Br. 4 (emphasis omitted) (citing Sneed Certification ¶ 12, ECF No. 38-1).) Plaintiffs further revealed that the Metropolitan investigated at the "encouragement" of the current Patriarch and that his investigation uncovered Defendant's possession of the Manuscripts. (Def.'s Moving Br. 4.) Plaintiffs also produced a 1995 book written by the Metropolitan that recognized certain of the Manuscripts were in Defendant's possession (the "Book"). (*Id.* at 4–5.) From these disclosures, Defendant sought additional discovery that would elicit information showing that Plaintiffs knew their claims were time-barred when they filed suit. (*Id.* at 5; Sneed Certification ¶¶ 13, 15.)

Defendant argues that dismissal of the Patriarch and the Metropolis would effectively bar discovery from them because Defendant would need to seek the same information through the Hague Convention—likely, in an untimely and limited manner. (*Id.* at 9–12.) Defendant argues:

4

> Plaintiffs['] goal is to leave the Monastery as the lone plaintiff,
> despite having previously disclosed that the Monastery has no
> individuals with relevant knowledge and that its documents have
> been destroyed, and [to] deprive Princeton of the ability to fully
> discover the complete facts known by the Patriarch and the
> Metropolis, facts which are imputable by agency principals to their
> subordinate Monastery.

(*Id.* at 1.) Defendant argues that granting the Motion would ultimately abate Defendant's statute

of limitations and laches defenses. (*Id.* at 8–9.) Defendant asks the Court to deny the Motion or

require the Patriarch and the Metropolis appear for their noticed depositions and provide responses

to outstanding discovery before entering an order of dismissal. (*Id.* at 14.)

Defendant cites as support *Alliance for Global Justice v. District of Columbia*,

No. 01-0811, 2005 WL 469593 (D.D.C. Feb. 7, 2005*), report and recommendation adopted*, ECF

No. 194 (D.D.C. June 20, 2005). There, the court reconsidered an order granting voluntary

dismissal of certain plaintiffs without terms or conditions of dismissal, despite the parties'

"disagreement as to whether the dismissed plaintiffs would be obliged to respond to . . . outstanding

discovery requests." *Id.* at *1–2. The defendant argued that it would suffer legal prejudice due to

"the loss of relevant information and the burden of seeking the information they already demanded

via other means, such as Rule 45 subpoenas." *Id.* at *2.

The *Alliance* court agreed with the defendant—having considered that dismissal of those

plaintiffs would not end the case, that the plaintiffs' "sophisticated counsel[] surely had to

appreciate when they began [the] lawsuit that they would have to undertake significant discovery

obligations," and that it would be unfair to burden the defendant with seeking the requested

information via other means. *Id.* at 3. The court held that "permitting plaintiffs to avoid their

discovery obligations would cause undue prejudice to the defendants, and conditions must be

imposed on their voluntary dismissal in order to protect [the defendants'] interests." *Id.*

5

Accordingly, the court recommended conditioning voluntary dismissal upon the plaintiffs' response to discovery requests served prior to the motion for voluntary dismissal. *Id.* at *4.

Here, as in *Alliance*, dismissal of the Patriarch and the Metropolitan—even if with prejudice—would not dispose of the entire matter. Defendant nonetheless must defend its case against the Monastery. Although Plaintiffs argue that "[i]t is not clear what additional discovery Defendant would need from [them]" (Pls.' Reply Br. 9), the Court finds this argument unpersuasive. On review of the notices of depositions, for example, it is apparent that Defendant seeks information relevant to its statute of limitations defense against the claims of the Monastery—the would-be remaining plaintiff. (*See, e.g.*, Nov. 27, 2019, Notice of Deposition of the Patriarch, Ex. E to Sneed Cert., ECF No. 38-6 at *2–11.[3]) For instance, Defendant seeks discovery from the Metropolis on the following:

> 10. The 1995 Book, including the creation, authoring, and publishing of the 1995 Book; where the Metropolis located the 1995 Book; and *the distribution and/or sharing of the 1995 Book*, including distribution and/or sharing of the 1995 Book with the Patriarch, the Patriarch's agents, *the Monastery*, and third-parties.
> . . .
> 16. The relationship between and among the Patriarch, the Metropolis, *the Monastery*, the Church of Greece, and the Government of Greece, including the administration of the Metropolis by the Church of Greece and the Patriarch.

(*Id.* at *10 (emphases added).) These requests are nonetheless relevant to Princeton's defense against the Monastery.[4]

Although Plaintiffs argue that "New Jersey law does not impute to the plaintiff knowledge held by other parties or knowledge contained in public records" (Pls.' Reply Br. 10), the Court

---

[3] Pages preceded by asterisks refer to the page numbers of the ECF header.

[4] Indeed, on reply, Plaintiffs agree to at least respond to Defendant's written requests concerning the Book. (Pls.' Reply Br. 9.)

finds this argument similarly unavailing. The relationship between Plaintiffs is not yet known, and certain of Defendant's discovery requests are directed to when the *Monastery* could have known Defendant had possession of the Manuscripts.

Furthermore, the timing of and reasoning for Plaintiffs' Motion is prejudicial against Defendant. It is unclear why Plaintiffs required the bulk of fact discovery to realize that the Monastery is the "sole and proper plaintiff in this lawsuit." (Pls.' Moving Br. 2.) Moreover, Plaintiffs filed their Motion two weeks after Defendant noticed depositions. Finally, to require Defendant obtain information from the Patriarch and the Metropolis through the Hague Convention several months before the end of fact discovery would be unfair and burdensome. (*See* Pretrial Scheduling Order (setting the close of fact discovery for March 2, 2020), ECF No. 21.) As a result, the Court will grant voluntary dismissal with prejudice of the Patriarch and the Metropolis's claims on the condition that outstanding discovery requests served upon the Patriarch and the Metropolis prior to December 13, 2019 are addressed.

IV.   **CONCLUSION**

For these reasons, the Court grants Plaintiffs' Motion to Dismiss contingent upon their completion of outstanding discovery. The Court will enter an Order consistent with this Memorandum Opinion.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE