NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

<table>
<tr><td>

HIS ALL HOLINESS, BARTHOLOMEW I,
THE ARCHBISHOP OF
CONSTANTINOPLE, NEW ROME, AND
ECUMENICAL PATRIARCH; THE HOLY
METROPOLIS OF DRAMA; AND THE
MONASTERY OF THEOTOKOS
EIKOSIPHOINISSA,

      Plaintiffs,

      v.

PRINCETON UNIVERSITY

      Defendant.

</td><td>

Civil Action No. 18-17195 (RK) (DEA)

**MEMORANDUM OPINION**

</td></tr>
</table>

**THIS MATTER** comes before the Court upon Plaintiffs' appeal (ECF No. 105) of Magistrate Judge Arpert's November 22, 2022 Order (ECF No. 101), filed on December 6, 2022. Defendant filed a brief in opposition on December 20, 2022 (ECF No. 109), and Plaintiffs replied on December 27, 2022 (ECF No. 110). Defendant sought leave to file a sur-reply (ECF No. 111), which the Court denied (ECF No. 113).

The Court has considered the parties' submissions and resolves the matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, Plaintiffs' appeal is **DENIED**.

## I.    BACKGROUND

Plaintiffs are the Monastery of Theotokos Eikosiphoinissa (the "Monastery"), The Holy Metropolis of Drama (the "Metropolis"), and His All Holiness, Bartholomew, I, The Archbishop of Constantinople, New Rome, and Ecumenical Patriarch (the "Patriarch"). (*Id.* at 1.) On

December 13, 2018, Plaintiffs filed suit in this Court, seeking to recover four manuscripts allegedly stolen from the Monastery in 1917 by Bulgarian soldiers and acquired by Defendant Princeton University between 1921 and 1942. (*See* Compl. ¶ 1, ECF No. 1; Parties' Joint Status Letter at 1, ECF No. 121.) Plaintiffs seek the Court to declare Plaintiffs the lawful owners of the manuscripts and order their return pursuant to legal doctrines of replevin and conversion. (ECF No. 1.) In opposition, Defendant argues, in part, that even assuming its manuscripts were stolen from the Monastery over 100 years ago, the statute of limitations and doctrine of laches bar the suit because Plaintiffs discovered the manuscripts' location many years before they sued. (ECF No. 121 at 2.)

To support its affirmative defenses, Defendant has sought discovery on how and when Plaintiffs were first notified that the lost manuscripts may have been at Princeton. In response to Defendant's interrogatory request about individuals with knowledge of Plaintiffs' efforts to locate the missing manuscripts, Plaintiffs' October 15, 2019 response indicated that high-ranking leaders of the Monastery and the Eastern Orthodox Church had been investigating the missing manuscripts since at least the early 1990s. (Pls.' Interrog. Answers at 5–10, ECF No. 38-3.) On November 27, 2019, Defendant noticed an individual deposition of the Patriarch and Rule 30(b)(6) depositions of the Monastery and the Metropolis. (ECF No. 38-6.) On December 13, 2019, Plaintiffs moved to dismiss the Patriarch and the Metropolis from the action under Federal Rule of Civil Procedure 41(a)(2), arguing that the Monastery was the sole owner of the manuscripts and therefore the only proper party to the suit. (ECF No. 30.)

On July 23, 2020, Judge Shipp issued an order denying-in-part and granting-in-part Plaintiffs' motion. (ECF No. 45.) The Court found that dismissing the two Plaintiffs outright would prejudice Defendant, as "it is apparent that Defendant seeks information relevant to its statute of limitations defense" from the Plaintiffs and that proceeding through the Hague Convention to

depose the Plaintiffs would unduly burden Defendant. (Mem. Op. at 6–7, ECF No. 44.) The Court also noted the "timing of and reasoning for Plaintiffs' motion," that Plaintiffs offered an insufficient explanation as to the time-lapse confirming that the Monastery was the sole owner, or why Plaintiffs waited until just after Defendant noticed depositions to move to dismiss two Plaintiffs. (*Id.* at 7.) However, the Court granted Plaintiffs' motion to dismiss "on the condition that outstanding discovery requests served upon the Patriarch and the Metropolis prior to [the date Plaintiffs filed their motion to dismiss] are addressed." (*Id.*)

Discovery resumed. On May 6, 2021, Defendant served Plaintiffs with a deposition notice for Professor George K. Papazoglou (the "Professor"). (ECF No. 74-1.) Defendant alleges that the Professor, whom Plaintiffs characterize as their *pro bono*, non-testifying expert, has communicated with Plaintiffs for decades about the manuscripts and possesses unique knowledge regarding how and when Plaintiffs came to believe that Princeton housed their stolen manuscripts. (ECF No. 75 at 4–7.) On July 8, 2021, the parties elevated several outstanding discovery disputes, including over the Professor's deposition, in letter briefing to Judge Arpert. (ECF Nos. 74, 75, 76, 77.) Following unsuccessful settlement discussions, on October 14, 2022, the parties submitted a joint letter identifying outstanding discovery disputes. (ECF No. 98.)

On November 16, 2022, Judge Arpert conducted an exhaustive hearing on the discovery disputes. (*See generally* Tr., ECF No. 104.) Judge Arpert extensively questioned counsel, considered the parties' arguments, and made findings on the record further memorialized in a written decision issued the following week. When asked about the Professor's level of involvement with the case, Plaintiffs indicated that they relied on documents the Professor supplied in preparing their interrogatory responses. (Tr. at 15:3–7.) Plaintiffs' counsel further acknowledged that Plaintiffs "learned about Princeton through [the Professor], that's also documented in response to

Interrogatory 1." (Tr. at 14:20–15:2.) Judge Arpert inquired about Plaintiffs' access to and control over the Professor. Plaintiffs' counsel represented that the Professor was "trying to ingratiate himself with the -- you know, our clients." (Tr. at 8:22–24.) When Judge Arpert asked whether Plaintiffs' counsel had previously asked the Professor to sit for a deposition, Plaintiffs' counsel responded "we didn't try to convince him one way or the other," (Tr. at 9:21–22), but another attorney for Plaintiffs followed up that they asked the Professor to sit but "he refused. I conveyed that there was a chance for a deposition, he said he would refuse and fight it." (*Id.* at 10:9–12.)

After hearing Plaintiffs' arguments that the Court lacked jurisdiction over the Professor, and that Defendant's only recourse was seeking a deposition through the Hague Convention process, Judge Arpert concluded:

> I think the nuanced answer here is that . . . the Rule 30 deposition notice is designed to compel the Plaintiffs to act to do something, right? It's not designed to compel the Professor to appear, it's designed to compel the Plaintiffs to produce the Professor, right? . . . That's the nuance here. No, they can't compel the Professor to appear using the Rule 30 notice, but they're asking the Court to enforce the notice to compel the Plaintiffs to act to produce the Professor."

(*Id.* at 26:19–22, 27:3–7.)

On November 23, 2022 Judge Arpert ruled on the parties' discovery disputes and issued an Order "direct[ing] Plaintiffs to produce the Professor for a deposition." (ECF No. 101 at 6.) In reaching this result, Judge Arpert emphasized that ascertaining when Plaintiffs discovered the manuscripts was critical to Defendant's affirmative defenses, finding that "there can be no dispute that significant issues in this case center on when Plaintiffs knew or should have known that Princeton held the Manuscripts." (*Id.* at 2.) Judge Arpert also noted that Plaintiffs represented that the manuscripts' location came to Plaintiffs' attention through communications with Professor Papazoglou and that "[d]ue to the amount of time that has passed and the loss of other witnesses,

the Professor appears to be the only person with relevant information regarding his interactions many years ago with the Monastery." (*Id.* at 2–3, 6) Therefore, Defendant had established "exceptional circumstances" that warranted a court order permitting Defendant to depose Plaintiffs' non-testifying expert under Federal Rule of Civil Procedure 26(b)(4)(D)(ii). (*Id.* at 5.)

After finding that Defendant could depose the Professor under Rule 26, Judge Arpert ordered Plaintiffs "to make Professor Papazoglou available for a remote deposition as soon as practicable." (*Id.* at 7.) Based on his review of the pleadings and evaluation of Plaintiffs' representations at the hearing, Judge Arpert found that Plaintiffs exercised sufficient control over the Professor to be able to produce him. (*Id.* at 6–7.) Among the evidence that Judge Arpert cited in reaching this finding was: (1) the Professor's "extensive[]" assistance with Plaintiffs regarding their discovery responses; (2) the Professor's service to Plaintiffs "as consultant and non-testifying expert" for almost ten years; (3) testimony by Plaintiffs' Rule 30(b)(6) witness that the Professor "makes himself available to Plaintiffs on a pro bono basis;" and (4) a relationship history showing that he assists Plaintiffs upon request. (*Id.*)

On December 6, 2022, Plaintiffs filed the subject appeal of Judge Arpert's ruling. (ECF No. 105.) On December 9, 2022, Judge Arpert granted Plaintiffs' motion for a stay pending the Court's decision on Plaintiffs' appeal. (ECF No. 102.)

## II.    LEGAL STANDARD

A magistrate judge is "accorded wide discretion in addressing non-dispositive motions." *Marks v. Struble*, 347 F. Supp. 2d 136, 149 (D.N.J. 2004). A magistrate judge's ruling on a non-dispositive matter, such as a motion for leave to amend, may only be set aside if the "order is clearly erroneous or contrary to law." *Id.*; *see also* 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a). "A finding is clearly erroneous only 'when although there is evidence to support it, the reviewing

court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Cooper Hosp./Univ. Med. Ctr. v. Sullivan*, 183 F.R.D. 119, 127 (D.N.J. 1998) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 365, 395 (1948)). For a decision to be contrary to law, "the Court must find the magistrate judge misapplied or misinterpreted the applicable law." *Hooker v. Novo Nordisk Inc.*, No. 16-4562, 2019 WL 2521749, at *2 (D.N.J. June 19, 2019) (citing *Gunter v. Ridgewood Energy Corp.*, 32 F. Supp. 2d 162, 164 (D.N.J. 1998)).

The party appealing the Magistrate's decision bears the burden of showing the ruling is clearly erroneous or contrary to law. *Travelers Indemn. Co. v. Dammann & Co.*, 592 F. Supp. 2d 752, 758–59 (D.N.J. 2008), aff'd, 594 F.3d 238 (3d Cir. 2010). When the underlying ruling relates to a non-dispositive matter, such as a discovery motion, the Magistrate's "ruling is entitled to great deference and is reviewable only for abuse of discretion." *Frank v. Cnty. of Hudson*, 924 F. Supp. 620, 623 (D.N.J. 1996) (citations omitted). Abuse of discretion is found "when the judicial action is arbitrary, fanciful or unreasonable," or in other words, "only where no reasonable man [or woman] would take the view adopted by the court." *Fagan v. Fischer*, No. 14-7013, 2018 WL 2859541, at *10 (D.N.J. June 11, 2018) (quoting *Lindy Bros. Builders v. Am. Radiator & Standard Corp.*, 540 F.2d 102, 115 (3d Cir. 1976)).

III.   **DISCUSSION**

Plaintiffs contest both the factual findings and the legal basis for Judge Arpert's order that Plaintiffs produce their non-testifying expert witness for deposition. Plaintiffs contend that neither Rule 26 nor Rule 30 authorize exercise of the Court's jurisdiction over the non-party Professor. (ECF No. 105-1 at 10–13.) Plaintiffs further contend that assuming *arguendo* proper jurisdiction, a deposition notice issued under Rule 30 is invalid against a non-party, and Rule 26(b)(4)(D) only permits discovery of a non-testifying expert's opinions, not facts he knows. (*Id.* at 8–10, 13–14.)

Plaintiffs further argue that Judge Arpert's Order violated Judge Shipp's July 23, 2020 Order dismissing two plaintiffs (the Patriarch and the Metropolis) from the case subject to compliance with then-outstanding discovery requests. (*Id.* at 14.) Finally, Plaintiffs raised for the first time in its Reply brief the argument that Judge Arpert's order would "co-opt the hierarchy of the Eastern Orthodox Church" in a way that violates the First Amendment. (ECF No. 110 at 4–7.)[1]

The Court finds that Judge Arpert's exercise of discretion was sound and his legal analysis correct.[2] The Court agrees with Judge Arpert's finding that "exceptional circumstances" justified deposing Plaintiffs' non-testifying expert. While Rule 26 generally holds that "facts known or opinions held" by a party's non-testifying expert are not discoverable, a party may depose a non-testifying expert "on showing exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means." Fed. R. Civ. P. 26(b)(4)(D); *see also J.V. v. Macy's, Inc.*, No. 13-5957, 2015 WL 12866971, at *2 (D.N.J. Aug. 19, 2015) (party seeking discovery under Rule 26(b)(4)(D) has "strenuous burden to compel disclosure"). Judge Arpert found — and the Court concurs — that the timing of Plaintiffs' alleged discovery of the manuscripts' location is critical to Princeton's two affirmative defenses. (ECF No. 101 at 2.) Reviewing the record, Judge Arpert found that the Professor is the sole source of this information, apart from perhaps the Patriarch, whose deposition Plaintiffs have fought. (*Id.* at 6.)

---

[1] Defendant submitted a letter requesting leave to file a sur-reply to Plaintiffs' First Amendment argument, (ECF No. 111), and Plaintiffs filed a letter in opposition (ECF No. 112). The Court denied Defendant's request, noting that the Court would inform the parties if further briefing was necessary. (ECF No. 113.)

[2] Deference to Judge Arpert's decision is especially appropriate here given his familiarity with the record. *See Lithuanian Commerce Corp., Ltd. v. Sara Lee Hosiery*, 177 F.R.D. 205, 214 (D.N.J. 1997) (citation omitted) (noting that deference to the magistrate is "especially appropriate" when the magistrate has overseen a case for an extended period and "developed a thorough knowledge of the proceedings"). Judge Arpert has managed discovery in this case over the past two years and thus has developed knowledge of what the parties referred to in their joint letter as "peculiar challenges" the case presents based on "the stature and nature of the Plaintiffs in this case." (ECF No. 121 at 4.)

Plaintiffs' argument that Rule 26(b)(4) applies only to "expert opinions" sought from a non-testifying expert ignores the plain language of the Rule, which permits discovery through a deposition in exceptional circumstances to uncover "*facts known* or opinions held" by a party's non-testifying expert. R. 26(b)(4)(D) (emphasis added). Judge Arpert's decision to permit deposition of the Professor to probe facts exclusively known to him is supported by caselaw. *See Indus. Maritime Carriers, Inc. v. PT (Persero) Inka*, 179 F.R.D. 153 (E.D. Pa. 1998) (finding that plaintiff's non-testifying marine surveyor expert could be deposed on his observations of a vessel made in the ordinary course of business).

Plaintiffs' next objection to Judge Arpert's Order is that the Court lacks personal jurisdiction over the Professor, such that the Court cannot compel him to appear for a deposition. (ECF No. 105-1 at 10–11.) Judge Arpert recognized this limitation but disagreed with the result, finding a "nuanced" distinction between issuing a subpoena to a non-party and ordering a party to produce its non-testifying expert over whom the party has control, who assisted the party in its litigation efforts, and who has unique knowledge about the case not ascertainable from any other source. (ECF No. 104 at 26:19–24.) Jurisdiction over the expert is not required as the Order applies only to parties over whom the Court has jurisdiction. *See Apostolou v. Mann Bracken, LLC*, No. 07-4950, 2009 WL 1312927, at *3 (D.N.J. May 1, 2009) ("Courts have consistently held that a court always has personal jurisdiction over a named plaintiff because that party, by choosing the forum, has consented to the personal jurisdiction of that court." (quoting *Moore v. Rohm & Haas Co.*, 446 F.3d 643, 646 (6th Cir. 2006))). Accordingly, Judge Arpert crafted his Order to ensure that any potential penalty for noncompliance would fall on Plaintiffs, the party to the litigation, and not the Professor. *See Yan Yan v. Fox Chase Cancer Ctr.,* 627 F. App'x 66, 69 n.4 (3d Cir. 2015) (District Court acted "well within its discretion" in striking plaintiff's interrogatory answers

8

because "[a]lthough [plaintiff] made numerous factual assertions in her answers, defendants were unable to question her regarding those assertions because [she] failed to appear for her deposition in violation of the District Court's order.").

Plaintiffs further argue that Rule 30 does not authorize noticing a deposition of a non-party and that if Defendant seeks to depose the Professor, it is required to proceed through the Hague Convention. (ECF No. 105-1 at 8–10.) Judge Arpert reasonably read Rule 26(b)(4)(D) — which permits a party to take the deposition of another's non-testifying expert under exceptional circumstances — in conjunction with Rule 30 — which provides the mechanism for noticing a deposition of a party's managing agent. *See* Rule 30(b)(1). Whether someone constitutes a party's "managing agent" is a "functional [test] to be determined largely on a case-by-case basis." *Founding Church of Scientology of Washington, D.C., Inc. v. Webster*, 802 F.2d 1448, 1452 (D.C. Cir. 1986). Courts may look to a party's control of its agent in determining whether the party can be compelled to produce the agent for deposition, especially when the individual has knowledge unique to anyone in the organization. *See Alcan Int'l Ltd. v. S.A. Day Mfg. Co.*, 176 F.R.D. 75, 79 (W.D.N.Y. 1996) (party required to produce its foreign affiliate's retired director living abroad who was "specifically identified" as someone "with direct knowledge" about relevant matters "unavailable from any other source"); *Calgene, Inc. v. Enzo Biochem*, No. 93-195, 1993 WL 645999, at *8 (E.D. Cal. Aug. 23, 1993) (party's "very long time" consultant and advisory board member was managing agent because he had "power regarding the subject matter of the litigation"); *Sugarhill Recs. Ltd. v. Motown Rec. Corp.*, 105 F.R.D. 166, 170 (S.D.N.Y. 1985) (party required to produce its employee as a managing agent in part because she was the "sole employee . . . involved and knowledgeable" about relevant issues).

Judge Arpert found that Plaintiffs likely exercised sufficient control over the Professor for purposes of requiring his appearance at a deposition. According Judge Arpert the mandated deference applied here, his findings are more than adequate to require Plaintiffs to produce the Professor for a video deposition. None of the cases cited by Plaintiffs in arguing for a contrary interpretation of Rule 30 involve analogous facts or circumstances, particularly regarding a finding of "exceptional circumstances" authorizing the expert's deposition under Rule 26(b)(4)(D). *See e.g. In re: Benicar (Olmesartan) Prod. Liab. Litig.*, No. 15-2606, 2016 WL 5817262, at *3 (D.N.J. Oct. 4, 2016) (party noticed deposition of overseas witnesses employed by non-party company); *United States v. Afram Lines (USA), Ltd.*, 159 F.R.D. 408, 413 (S.D.N.Y. 1994) (party noticed deposition of opponent's overseas agents); *Riff v. Police Chief Elmer Clawges*, 158 F.R.D. 357, 358 (E.D. Pa. 1994) (party noticed deposition of plaintiff's son).

The Court disagrees that Judge Arpert's Order runs afoul of Judge Shipp's July 23, 2020 Order conditionally dismissing two Plaintiffs from the action. First, it is unclear whether Judge Arpert's Order even requires the personal involvement of the Patriarch or the Metropolis, as Plaintiffs claim. Judge Arpert's Order was directed to "Plaintiffs" as a whole, and neither was specifically named in the disputed order. (*See* ECF No. 101 at 6–7.) In any event, a plain reading of the July 23, 2020 Order indicates that the dismissal of the Patriarch and the Metropolis was conditioned on full compliance with the conditions set forth in the Order. (*See* ECF No. 44 at 7 ("grant[ing] voluntary dismissal with prejudice of the Patriarch and the Metropolis's claims on the condition that outstanding discovery requests served upon the Patriarch and the Metropolis . . . are addressed").) As Plaintiffs have not yet addressed those outstanding discovery requests, they remain parties to this action. *See Brennan v. Kulick*, 407 F.3d 603, 607 (3d Cir. 2005) (district

court continued to exercise jurisdiction over case as it proceeded even after it was dismissed with conditions).[3]

Finally, the Court is not persuaded by Plaintiffs' argument, raised for the first time on reply, that Judge Arpert's Order violates the First Amendment. The Court notes it need not consider an argument first raised on reply. *See Krys v. Aaron*, 112 F. Supp. 3d 181, 198 n.18 (D.N.J. 2015) ("The Court will, accordingly deem arguments made for the first time in reply waived.") (citing *Am. Home Mortgage Corp. v. First Am. Title Ins. Co.*, No. 07–1257, 2007 WL 3349320, at *3 n. 8 (D.N.J. Nov. 9, 2008)). Even if the Order did specifically name the Patriarch and Metropolis, the Court is unpersuaded that this would unconstitutionally "co-opt the hierarchy of the Eastern Orthodox Church." (ECF No. 110 at 4–7.) Religious figures and institutions are commonly sued or, as here, make the affirmative choice to initiate suit. The First Amendment does not operate to insulate religious figures from the Court's jurisdiction during the litigation process, particularly when they initiate the litigation in the first place.

IV.    **CONCLUSION**

For the foregoing reasons, Plaintiffs' Appeal (ECF No. 105) is **DENIED** and Judge Arpert's Order (ECF No. 101) is **AFFIRMED**. An appropriate Order follows.

_____
ROBERT KIRSCH
UNITED STATES DISTRICT JUDGE

Dated: June 22, 2023

---

[3] Plaintiffs also rely on the fact that the Clerk of Court marked the parties "terminated" on ECF (ECF No. 110 at 8), which the Court notes is simply an administrative notation.