April 17, 2024

**VIA ELECTRONIC CASE FILING**

Honorable Judge Rukhsanah L. Singh, U.S.M.J.
U.S. District Court, District of New Jersey
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street
Trenton, New Jersey 08608

> Re:   ***His All Holiness, Bartholomew I, et al. v. Princeton University,***
> <u>**Civil Case No. 3:18-cv-17195-RK-RLS**</u>

Dear Judge Singh:

We represent Plaintiffs His All Holiness Bartholomew I (the "Patriarch" or "His All Holiness"), the Metropolis of Drama (the "Metropolis"), and the Monastery of Theotokos Eikosiphoinissa (the "Monastery") in the referenced action. We respectfully submit this pre-motion letter pursuant to Local Civil Rule 37.1(a)(1) and the Court's March 25, 2024 Text Order. Plaintiffs identify the discovery disputes that the parties have been unable to resolve and summarize Plaintiffs' primary arguments. Plaintiffs will brief the discovery motions in detail if the Court grants leave to file those motions.

<u>RELEVANT PROCEDURAL HISTORY</u>

On November 22, 2022, the Honorable Douglas E. Arpert, U.S.M.J., entered an Order deciding three discovery disputes, including a holding compelling the deposition of Professor George Papazoglou (the "Professor"), Plaintiffs' non-testifying consultant, pursuant to a notice of deposition that Defendant Princeton University ("Princeton") issued under Rule 30. Order (ECF No. 101) (Nov. 22, 2022). On December 6, 2023, Plaintiffs appealed Magistrate Judge Arpert's Order, arguing, in part, that a notice of deposition issued under Rule 30 was insufficient to summon a non-party and, furthermore, this court had no jurisdiction over a non-party, Greek national residing in Greece. Appeal of Magistrate Judge's Decision (ECF No. 105) (Dec. 6, 2022).

On June 22, 2023, the Honorable Robert Kirsch, U.S.D.J., issued an Order denying Plaintiff's appeal, and justifying the notice under Rule 30 on the grounds that the Professor was an agent of Plaintiffs. Appeal Order (ECF No. 123) (June 22, 2023). On July 6, 2023, Plaintiffs filed a Motion for Reconsideration of the Appeal Order, objecting to the finding that the Professor is an agent of Plaintiffs and explaining that Plaintiffs have no ability to command or compel the Professor to sit for deposition. Plaintiffs' Motion for Reconsideration (ECF No. 125) (July 6, 2023). On September 26, 2023, Judge Kirsch denied Plaintiffs' Motion for Reconsideration. Order (ECF No. 136) (Sept. 26, 2023).

Despite Plaintiffs' diligent and earnest attempts to get the Professor to voluntarily sit for a deposition, the Professor declined, informing Plaintiffs that he refused to sit for deposition and that his response was final. On February 7, 2024, counsel for Plaintiffs met and conferred with counsel for Princeton and informed them of the Professor's communicated refusal to sit for deposition.

The parties therefore present their unresolved discovery disputes now pursuant to Local Civil Rule 37.1(a)(1). The parties agreed upon a list of those disputes, and presented them to the Court. Joint Letter (ECF No. 149) (March 22, 2024). On March 25, 2024, Your Honor entered a Text Order setting deadlines for pre-motion letters and replies. Order (ECF No. 150) (March 25, 2024).

## UNRESOLVED DISCOVERY DISPUTES

Defendants proposed discovery applications comprise two issues.[1] We address the issues in turn.

### I. Defendant's Proposed Discovery Applications

#### a. Princeton's Request for Sanctions, or Other Evidentiary Relief, for Plaintiffs' Failure to Produce Professor George Papazoglou for His Court Ordered Deposition

Defendants seeks leave to move for sanctions, or other evidentiary relief, for Plaintiffs' inability to produce the Professor for deposition. The Court should deny that application because Plaintiffs took every action within their power to get the Professor to sit for deposition. Plaintiffs, therefore should not be punished for the fact that the deposition did not occur. Furthermore, sanctions, including evidentiary relief such as a negative inference, would be inappropriate for the additional reason that Defendant had every opportunity to acquire the same deposition testimony through the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, Mar. 18, 1970, 23 U.S.T. 2555 ("Hague Evidence Convention"), but declined to do so.

The following facts are relevant to this dispute. In January 2024, Father Aetios, Grand Ecclesiarch and the Director of the Patriarchal Private Office, called Professor Papazoglou to convey the Patriarchate's request that he voluntarily appear for a deposition to be taken by Princeton University. Affirmation of George Tsougarakis (hereinafter "Tsougarakis Affirmation") ⁋ 3. Father Aetios made clear to the Professor that he was requesting on behalf of the Patriarchate that the Professor appear for the deposition. *Id.* The Professor agreed to consider the Patriarchate's request. *Id.* ⁋ 4. In a subsequent phone call, in early February 2024, the Professor denied the Patriarchate's request to sit for a deposition, indicating that as a Greek citizen he does not have to voluntarily submit to a deposition for a case in the United States. *Id.* ⁋ 7. The Professor also told Father Aetios that, in any event, he refused to testify about any of his discussions with Metropolitan Pavlos of blessed memory because he considered them to be confidential. *Id.* Father Aetios

---

1. Through mutual agreement, the parties were able to resolve four of the original six issues outlined in the Joint Letter submitted to the Court on March 22, 2024. Joint Letter (ECF No. 149) (March 22, 2024). The remaining two issues are presented to the Court here.

encouraged him to reconsider and expressed the Patriarchate's support for the deposition, but the Professor, again, refused to sit for the deposition. *Id.* ¶ 8.

On January 25, 2024, counsel for Plaintiffs—in furtherance of Father Aetios's efforts—also provided the Professor with Princeton's Amended Notice of Deposition, dated January 19, 2024, which explicitly provides that his deposition has been ordered pursuant to this Court's Orders dated November 22, 2022, June 22, 2023, and September 26, 2023. Tsougarakis Affirmation ¶ 6; *Id.* ¶ 10, Exhibit A (Defendant's Amended Notice of the Deposition of George K. Papazoglou, dated January 19, 2024). The Professor also reached out to Plaintiffs' counsel via an unscheduled phone call to confirm that he would not voluntarily comply with Princeton's request for a deposition. *Id.* ¶ 9. Despite clarification that it was also Plaintiffs' request that he appear, Professor Papazoglou advised counsel that he would never sit for the deposition. *Id.* The Professor's continued refusal to sit for deposition, in opposition to Plaintiffs' request that he do so, and despite his knowledge that Plaintiffs were ordered by the Court to produce him for a deposition, demonstrates Plaintiffs' lack of control over him.[2] As such, the Professor's refusal to appear should not be blamed on Plaintiffs.

### i. Sanctions Pursuant to Rule 37(b)(2)(A) Are Inappropriate Because, Despite Reasonable Good Faith Effort, Plaintiffs Are Unable to Produce the Professor

Federal Rule of Civil Procedure 37(b)(2)(A) provides that the Court may issue discovery sanctions "[i]f a party or a party's officer, director, or managing agent fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a)[.]" Sanctions are inappropriate under this Rule because Plaintiffs have demonstrated that, despite the diligent efforts made by the highest levels of the Patriarchate, it was unable to produce the Professor at no fault of their own.

"Rule 37 ... authorizes the Court to sanction a party for discovery abuses," the "rule's purposes are to: (1) penalize the culpable party or attorney; (2) deter others from engaging in similar conduct; (3) compensate the court and other parties for the expense caused by the abusive conduct; and (4) compel discovery and disclosure." *Wachtel v. Health Net, Inc.*, 239 F.R.D. 81, 99 (D.N.J. 2006). In the Third Circuit, "a district court must ensure that there is an adequate factual predicate for flexing its substantial muscle under its inherent powers, and must also ensure that the sanction is tailored to address the harm identified." *Id.* (citing *Republic of Philippines v. Westinghouse Elec. Corp.*, 43 F.3d 65, 74 (3d Cir. 1994)). "The Court of Appeals instructs district courts to be guided in their application of their inherent powers by the same considerations that guide them in the imposition of sanctions under the Federal Rules: first a court considers the conduct at issue and explains why the conduct warrants sanctioning, and second it considers the

---

2.   Although Plaintiffs continue to object to the characterization of the Professor as a "managing agent" of Plaintiffs, they do not attempt to re-litigate that issue in this briefing.  It is relevant though that Plaintiffs have consistently maintained that they have no control over the Professor, legally or otherwise. Plaintiffs' Motion for Reconsideration at 9 (ECF No. 125). Although the Professor has agreed on previous occasions, at the personal behest of Metropolitan Pavlos, to assist with the historical research, he made no commitments and entered into no agreements with Plaintiffs regarding to his continued assistance in this matter. *Id.*  The Professor is not, nor has ever been, an employee or agent of Plaintiffs. *Id.* at 10.

range of permissible sanctions and explains why less severe alternatives to the sanction imposed are inadequate or inappropriate." *Wachtel*, 239 F.R.D. at 100.

In *Sali v. Corona Regional Medical Center*, 884 F.3d 1218 (9th Cir. 2018), the Ninth Circuit summarized the consequences of a party's inability to comply with an order to produce a non-party witness under Rule 37 in the instance that the party, at least, attempted in good faith to comply with the order:

> While an order to produce a deponent under Rule 37 and a subpoena under Rule 45 are intended to bring about the same outcome, the order's focus and the consequences of noncompliance are different. A Rule 37 order is directed at the party. It compels the party to use its best efforts to secure the non-party's attendance at the deposition. But it doesn't demand the impossible. The party can avoid sanctions by showing that it attempted in good faith to comply with the order but was unable to produce the non-party—regardless of whether the nonparty's absence was justified. *See Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770, 784 n.8 (9th Cir. 1983) ("[T]he use of Rule 37 sanctions must be tempered by due process.... [I]t is improper to dismiss a claim or to exclude evidence if the failure to comply with a discovery order is due to circumstances beyond the disobedient party's control."); *see also Societe Internationale Pour Participations Industrielles et Commerciales, S.A. v. Rogers*, 357 U.S. 197, 212, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958) ("Rule 37 should not be construed to authorize dismissal of this complaint because of petitioner's noncompliance with a pretrial production order when it has been established that failure to comply has been due to inability, and not to willfulness, bad faith, or any fault of petitioner.").

> Thus, a party won't incur Rule 37 sanctions if, despite its efforts, a recalcitrant nonparty witness refuses to attend an ordered deposition. Even if the party could have produced the nonparty but fails to do so, the party can still avoid incurring "reasonable expenses ... caused by the failure" if it "was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C).

*Sali v. Corona Reg'l Med. Ctr.*, 884 F.3d at 1224.

While in *Sali*, the Court found sanctions were appropriate, the Plaintiffs' diligent efforts to produce the Professor require the opposite result.[3] "Federal Rule 37 is not a legal requirement to do the impossible, and the courts have declined to assess a penalty 'for a failure to do that which it may not have been in its power to do.'" *Cochran Consulting, Inc. v. Uwatec USA, Inc.*, 102 F.3d 1224, 1232 (Fed. Cir. 1996) (citing *Hammond Packing Co. v. Arkansas*, 29 S.Ct. 370, 378 (1909)). In *Cochran*, the Federal Circuit reversed an award of sanctions that was given for failure to comply with a discovery order, finding that (i) the party in question was not in possession of the code it was being asked to produce, (ii) the Swiss court had prohibited the party from obtaining or revealing the code, and (iii) the code was unnecessary to prove the alleged infringement claim. *Id.*

---

3.   In *Sali*, as opposite to the facts presented here, the court found "*no* evidence that plaintiffs made *any* effort to secure [the expert's] attendance at the deposition." *Id.* at 1225 (emphasis added).

Father Aetios, Grand Ecclesiarch and the Director of the Patriarchal Private Office, who was empowered to speak with the full authority of the Patriarchate asked the Professor to sit for a deposition in this matter. Tsougarakis Affirmation ⁋⁋ 3-4. Still, the Professor refused the comply and continued to refuse despite the efforts of Father Aetios and Plaintiffs' counsel. Tsougarakis Affirmation ⁋⁋ 7-9. Plaintiffs made extensive good faith efforts to convince the Professor to voluntarily sit for deposition. As such, sanctions under Rule 37 are not warranted.

Any award of expenses under Rule 37(b)(2)(C) is similarly unwarranted because the failure is substantially justified by Plaintiffs' efforts to comply and would be unjust under the circumstance that Plaintiffs have no control over the Professor.  Plaintiffs are a religious organization primarily engaged in the advancement of the Greek Orthodox faith and good works around the world. Their counsel has executed this litigation on a pro bono basis for years in the interests of justice; to set right—in part—an unconscionable wrong that occurred over a hundred years ago to a small monastery in Northern Greece, which has had little to no recompense since. An award of expenses or costs would impose a significant and unfair burden on Plaintiffs under the circumstances, and would be particularly inappropriate in light of the fact that Plaintiffs made serious efforts to engage a third-party's compliance with the order.

### ii. Civil Contempt Sanctions Pursuant to Violation of the Order is Also Inappropriate Because Plaintiffs Made All Reasonable Steps to Comply With the Court's Order

The law of this Circuit also supports finding that contempt sanctions—pursuant to any other capacity of this Court—are unwarranted under the circumstance that Plaintiffs have made every possible effort to comply with this Court's orders and have not been able to due to the actions of a third-party outside their control.

Initially, "the party moving the court to levy a civil contempt sanction bears a heavy burden to demonstrate the nonmovant's guilt with clear and convincing evidence." *U.S. v. Garden Homes Mgmt. Corp.*, 104 F. App'x. 796, 798 (3d Cir. 2004) (citing *Robin Woods, Inc. v. Woods*, 28 F.3d 396, 399 (3d Cir. 1994)). "[T]hree elements must be established by clear and convincing evidence: (1) that a valid order of the court existed; (2) that the [party] had knowledge of the order; and (3) that the [party] disobeyed the order. To the extent there are ambiguities in the evidence, they must be resolved in favor of the party charged with contempt." *Camerons Hardware Inc. v. Indep. Blue Cross*, 363 F. App'x. 197, 200 (3d Cir. 2010) (citing *John T. v. Del. County Intermediate Unit*, 318 F.3d 545, 552 (3d Cir. 2003)) (quotation marks omitted).

Princeton cannot meet this heavy burden, particularly as it related to a demonstration of Plaintiffs' disobedience of the Court's order. There was none. Simply put, Plaintiffs took extensive reasonable and good faith steps to ask a Greek citizen who (i) is not within the jurisdiction of this Court; (ii) is not employed or paid by any of the Plaintiffs; and (iii) is outside of the control of any of the Plaintiffs.  Plaintiffs' compliance with this order was completely reliant upon the decision of a third party over whom Plaintiffs had no control, notwithstanding Judge Kirsch's finding of agency. Plaintiffs obeyed the Court's order.

In this regard, it is important to note that, a party "may escape contempt by showing that it could not possibly comply with the court's order despite making all reasonable efforts to do so." *Harris v. City of Philadelphia*, 47 F.3d 1333, 1340 (3d Cir. 1995); *see also Newman v. Graddick*,

740 F.2d 1513, 1525 (11th Cir. 1984) ("[I]nability to comply is a complete defense to a contempt citation"). "If a violating party has taken 'all reasonable steps' to comply with the court order, technical or inadvertent violations of the order will not support a finding of civil contempt." *Robin Woods Inc. v. Woods*, 28 F.3d 396, 399 (3d Cir. 1994) (citing *General Signal Corp. v. Donallco, Inc.*, 787 F .2d 1376, 1379 (9th Cir. 1986)) (internal quotation marks omitted). As discussed further above, the Plaintiffs took all reasonable steps to obtain the Professor's deposition, including conveying the request to the Professor from a high ranking and well respected official at the Patriarchate. These circumstances demonstrate that complying with the Court's order was not within the control of the Plaintiffs, despite their best efforts to do so.

Furthermore, this Circuit has made clear that an order of civil contempt is impermissibly punitive if a contemnor is unable to comply with the order. *See Camerons Hardware Inc. v. Indep. Blue Cross*, 363 F. App'x. 197, 201 (3d Cir. 2010) (citing *United States v. Harris*, 582 F.3d 512, 520 (3d Cir. 2009)); *see also Bonomo v. Citra Capital Mgmt., LLC*, No. CIV. 11-04409 WHW, 2015 WL 5055137, at *2 (D.N.J. Aug. 26, 2015). "While the party raising the impossibility defense has the burden of proving it, courts will not be blind to evidence that compliance is now factually impossible." *Camerons Hardware Inc.,* 363 F. App'x. at 201 (internal quotation marks omitted). "Unlike the punitive nature of criminal sanctions, civil sanctions are wholly remedial." *Whittaker Corp. v. Execuair Corp.*, 953 F.2d 510, 517 (9th Cir. 1992). Here, a finding of civil contempt would be impermissibly punitive by punishing Plaintiffs for an inability to achieve a result that was not within their control.

Finally, a party cannot be held in contempt for actions of third parties when the party in question has no legal power to compel the third party to act otherwise. *See U.S. v. International Brotherhood of Teamsters*, 899 F.2d 143, 147 (2d Cir. 1990) ("[T]he court cannot coerce… [the party] to order persons whose actions he may not rightfully control to forfeit their substantial legal rights"); *see also Robinson v. Delicious Vinyl Records Inc.*, No. 2:13-CV-04111-CAS, 2014 WL 1715520, at *3 (C.D. Cal. Apr. 30, 2014). Here, the Professor has indicated that he is exercising a right[4] as a Greek citizen under Greek law to refuse to sit for a deposition. Plaintiffs have no legal right to coerce the Professor to make a different decision regarding his legal rights. Plaintiffs have exercised their influence over the Professor as far as they can by making continued and earnest requests that the Professor sit for deposition—but the Professor has refused. The Plaintiffs cannot now be held in contempt for the Professor's refusal when they had no legal power to compel him to act otherwise.

Under the above referenced law, any contempt sanctions against Plaintiffs for non-compliance are not warranted because Plaintiffs made "all reasonable efforts" to comply with the Court's order to produce the Professor.

### iii. Other Evidentiary Relief Is Also Inappropriate as Defendant Had Other Opportunities to Acquire the Same Deposition Testimony

---

4. Plaintiffs make no representations as to Greek law at this point, but to the extent the Court's order to produce a Greek citizen for a voluntary deposition is contrary to Greek law, that would be an additional reason why sanctions would be inappropriate and we reserve the right to brief this issue.

Other evidentiary relief, such as the imposition of a negative or adverse inference, is also inappropriate in this instance because 1) the relevant factors under New Jersey law for a negative inference in the instance of an absent witness are not met and 2) the Defendant had other opportunities and avenues to obtain this same evidence but refused to utilize those avenues.

In New Jersey, the Court must place findings on the record concerning each of the following before determining if a negative inference for an absent witness is warranted: "(1) that the uncalled witness is peculiarly within the control or power of only the one party, or that there is a special relationship between the party and the witness or the party has superior knowledge of the identity of the witness or of the testimony the witness might be expected to give; (2) that the witness is available to that party both practically and physically; (3) that the testimony of the uncalled witness will elucidate relevant and critical facts in issue [;] and (4) that such testimony appears to be superior to that already utilized in respect to the fact to be proven." *State v. Hill*, 974 A.2d 403, 413 (N.J. 2009).[5]

The Professor's outright refusal to attend a deposition, despite the Plaintiffs' continued efforts, demonstrates that the first and second factors of the above test cannot be satisfied in this instance. Plaintiffs evidently have no control over the Professor, or else they would have produced him to avoid the very motion at issue in this briefing. Additionally, any knowledge the Plaintiffs have concerning the Professor—his identity, knowledge, or possible testimony—has been offered at the depositions of the Monastery, Metropolis and the Patriarchate. All of these witnesses spoke freely and openly as to any interactions their respective institutions have had with the Professor over the years—whatever knowledge was in Plaintiffs' possession is now available to Princeton as well. *See, e.g.,* Tsougarakis Affirmation ⁋ 11, Exhibit B (Metropolitan Pavlos Dep. Tr.) at 57:11-59:17.

In *Washington v. Perez*, 62 A.3d 335, 342 (N.J. Super. Ct. App. Div. 2013), *aff'd*, 98 A.3d 1140 (N.J. 2014), the New Jersey Appellate Division reversed a trial judge's decision to provide an adverse inference charge to the plaintiff. In that instance the absent witness was also an expert that the defendant had no intention of calling to testify. Reviewing the trial court's decision under the *Hill* factors, the Appellate Division noted that only two supported giving the adverse inference charge, specifically, that the witnesses were not unavailable to the defendant and that the experts "would likely elucidate relevant and critical facts in issue…" *Id.* at 341 (citation omitted). However, the Appellate Division concluded that the experts were not "'peculiarly within the control or power of only the one party,' because [the] plaintiff['s] counsel was entitled to call the defense experts" who had been identified in discovery. *Id.* (quoting *Hill*, 974 A.2d at 413) (citing *Fitzgerald v. Stanley Roberts, Inc.*, 895 A.2d 405, 414 (N.J. 2006)). The Court also noted that the plaintiff failed to demonstrate the fourth *Hill* factor applied, *i.e.*, that the uncalled experts' testimony was "superior," because the proffer was "corroborative or cumulative" of the deposition testimony of other witnesses. *Washington v. Perez*, 62 A.3d at 341.

Additionally, "[t]he failure to call a witness available to both parties has been said to preclude the raising of an inference against either." *State v. Clawans,* 183 A.2d 77, 82 (N.J. 1962) (citation omitted). Whether the witness is "available" to the party requesting the charge is assessed

---

5.   These factors are applicable in the civil context as well as the criminal. *See Konop v. Rosen*, No. A-2341-12T3, 2014 WL 982406, at *5 (N.J. Super. Ct. App. Div. Mar. 12, 2014).

by application of the first *Hill* factor. *Hill*, 974 A.2d at 433. The Professor was available to the Defendants in that they had every right and opportunity to call the witness pursuant to the Hague Evidence Convention, a multilateral treaty to which Greece and the United States are parties. By Defendant's own admission, they considered the Hague Evidence Convention a route by which to obtain the Professor's testimony—but refused to do so, instead issuing a notice of deposition to the Plaintiffs pursuant to Rule 30. *See* Princeton's Pre-motion Letter at 4 (ECF No. 98) (Oct. 14, 2022).

The Defendants chose to proceed through a Rule 30 notice of deposition despite Plaintiffs' explanation, several times over, that they had not only already asked if the Professor would sit for a deposition and he said 'no', but that they had no means by which to compel the Professor to sit for deposition if he continued to refuse. Appeal of Magistrate Judge's Decision at 5 (ECF No. 105) ("Plaintiffs' counsel conveyed Princeton's request to Professor Papazoglou that he sit for a deposition, but the Professor declined to appear voluntarily… Plaintiffs' counsel explained… 'He refused. I conveyed that there was a chance for a deposition, he said he would refuse and fight it.'"); Plaintiffs' Motion for Reconsideration at 9 (ECF No. 125) ("the Plaintiffs' agent has already asked if the Professor would sit for the deposition and he has unequivocally said 'no'… [a]s a matter of fact, the Professor is far beyond the control of the Plaintiffs… Plaintiffs are not paying the Professor, nor has he entered into any retainer agreement with Plaintiffs, so there is no legal obligation or financial incentive for the Professor to comply with Plaintiffs' requests or share their interests.") At the very least, Princeton could have made the decision to pursue the Rule 30 notice and the Hague evidence Convention application simultaneously, ensuring that they at least have some legal mechanism to compel the Professor's testimony should he refuse to voluntarily sit.

In *Torres v. Parabon*, 225 N.J. 167 (2016), the New Jersey Supreme Court overturned the lower court's finding that an adverse inference was appropriate upon a party's failure to call their own expert witness because the party "exercised no proprietary right to their expert's testimony, and [the other party] could have called [the expert witness] to the stand." *Id.* at 512 (citing *Washington v. Perez*, 98 A.3d at 1140) (noting defendants did not have exclusive control over physicians designated as their experts). Here, just because the procedural mechanism is different (*i.e.* the Hague Convention versus a Rule 30 notice or Rule 45 subpoena), it does not change the basic application of the law—the expert witness was available to Princeton therefore they cannot now ask to benefit from an adverse inference for a missing witness.

*Torres* also elucidates why a *Clawans* charge is rarely warranted when the missing witness is not a fact witness but an expert:

> "[A] *Clawans* charge will rarely be warranted when the missing witness is not a fact witness, but an expert. By virtue of the expansive expert discovery authorized by our court rules, an expert's opinions and the factual basis for those opinions are likely to be disclosed to the opposing party well in advance of trial. Moreover, a party's decision not to call a particular expert witness may reflect strategic considerations having nothing to do with that party's fear of adverse testimony. Thus, when the witness whom a party declines to call at trial is an expert rather than a fact witness, the factors that may necessitate an adverse inference charge addressing the absence of a fact witness are unlikely to be germane."

*Torres,* 137 A.3d at 513 (citations and internal quotation marks omitted).

Even though Princeton was given ample notice about the Professor's refusal to voluntarily sit for a deposition, they chose to ignore the one procedural mechanism that could legal require a foreign national to sit for testimony: the Hague Evidence Convention. Princeton made this choice intentionally, believing that it would be more expeditious and effective to issue a notice under Rule 30 than an application under the Hague Evidence Convention. *See e.g.* Princeton's Pre-motion Letter at 4 (ECF No. 98) (Oct. 14, 2022). Now, Princeton asks the Court to do their work for them by entering a negative inference, or other evidentiary finding, to remediate a poor strategic decision. To enter such an evidentiary finding when Princeton had a perfectly viable route to access the Professor would not only be contrary to this state's precedent, but also inequitable to Plaintiffs as these circumstances were caused by no fault of their own.

> **b.   The Production of the Documents Provided to Metropolitan Dionysios by Professor Papazoglou, Along with the Production of any Private or "Unregistered" Materials, as Referenced in, inter alia, Deposition Exhibit 15, Bates Label PAT0000081**

Defendants seek to compel production of documents alleged to have existed over thirty-years ago and exchanged between the Professor and the late-Metropolitan Dionysios, who died in 2005, pursuant to a reference in a single email from the Professor to the late-Metropolitan Pavlos. As an initial matter, neither party has evidence to support the actual existence of these documents. Plaintiffs conducted a reasonable search of their records for the existence of any documents responsive to Defendant's requests and produced any responsive documents. To the extent that the supposed thirty-year old documents, which were obliquely referred to in PAT0000081, were not included in any of Plaintiffs' earlier productions from the Metropolis or the Monastery, it would suggest that Plaintiffs are not in possession of them.

Furthermore, it is not even apparent that these alleged thirty-year old documents are relevant to this matter. Indeed, the late-Metropolitan Pavlos testified at deposition that when he received the email noted in PAT0000081 he did not discuss the alleged documents referred therein with the Professor, because he thought the reference was to stolen manuscripts in Bulgaria, not those at issue here. Tsougarakis Affirmation ₱ 11, Exhibit B (Metropolitan Pavlos Dep. Tr.) at 101:13-15. Metropolitan Pavlos further testified to having no knowledge that the Professor had sent any documents to Metropolitan Dionysios thirty years ago, nor had he ever asked the Professor what documents he sent Dionysios thirty years ago. *Id.* at 102:6-23.

However, in an effort to resolve discovery disputes efficiently, counsel for Plaintiffs again requested that the Monastery and the Metropolis undergo a search for these alleged thirty-year old documents, and specifically search any "private" or "unregistered" materials held by Metropolitan Dionysios at Princeton's request. The Metropolis reported to counsel that no such correspondence between the late-Metropolitan Dionysios and the Professor was found in the archives of the Metropolis or Monastery. Princeton has requested the alleged thirty-year old documents and, to the extent they even exist, Plaintiffs have made an earnest effort to search for and produce them, despite indications that they are of questionable relevance. Any further orders to compel production would be futile.

10

## **CONCLUSION**

Thank you for the Court's consideration of this matter. We look forward to speaking with Your Honor about the discovery disputes discussed above.

Respectfully submitted,

*s/ George A. Tsougarakis*

George A. Tsougarakis

Enclosure

cc:      All Counsel of Record (w/encl., via ECF)